These are appeals by John Bennett Samford from an order entered by the Circuit Court of Lee County, Alabama, approving a proposed distribution of the estates of Millard Westcott Samford and Gwendolyn Bell *Page 148 
Samford by First Alabama Bank of Montgomery, N.A. (the Bank).
Millard Westcott Samford died on August 29, 1969, leaving a last will and testament. After providing for the payment of debts, taxes, and expenses, and after disposing of certain personal items, Mr. Samford left one-half of the residue of his estate to his wife, Gwendolyn Bell Samford, and the other half of the residue of his estate in trust for the benefit of his four children, in equal shares. Each child, other than one child who was incompetent, was entitled to receive his or her share of the estate free of trust at age thirty-one. Gwendolyn Bell Samford served as executrix of the will and trustee of the trust until her death on December 3, 1974. The Bank succeeded her in both capacities and was named executor and trustee under Mrs. Samford's will.
At the time of his death, Mr. Samford owned numerous parcels of property, the most significant of which were described as the Wright's Mill Road property, the Callahan Farm, the Gwen Mill Farm, and the Harwell Place. Under Mr. Samford's will, an undivided one-half interest in these and other less valuable properties passed to his wife, and an undivided one-half interest in the same properties passed into the testamentary trust for the children.
In September, 1974, John Samford, one of the four children, desired to enter a business venture in Birmingham. In that regard, he found it necessary to obtain a loan for $250,000 from the First National Bank of Birmingham; however, he needed property to pledge as collateral for the loan. Since, at that time, he was not yet thirty-one, John requested, through his lawyer, a partial distribution to him of his share of the trust properties. John's mother, as trustee, agreed to the partial distribution, but only if she could make equal and simultaneous distributions to each of the other children.
To facilitate this partial distribution, the children (except the incompetent child) and the mother entered into an agreement for partial distribution. Under this agreement, each child would receive an undivided one-half interest in one of the four parcels of property mentioned previously, free of trust, with the mother retaining her undivided one-half interest in each tract. John Samford received an undivided one-half interest in the Wright's Mill Road property. Each party further agreed to indemnify and hold Mrs. Samford harmless from any liability or loss which she might incur as trustee under the will of Mr. Samford as a result of these conveyances.
On the same day that the agreement for partial distribution was effectuated, John Samford borrowed $250,000 from the First National Bank of Birmingham. Mrs. Samford was not a party to and did not sign the note. Contemporaneously with the signing of the note, John Samford and his mother, Gwendolyn Bell Samford, mortgaged the Wright's Mill Road property to the First National Bank of Birmingham as security for the loan. Mrs. Samford's signature on the mortgage instrument enabled John to use the entire property as security for the loan, but did not expose Mrs. Samford to any liability for the repayment of the indebtedness or for the performance of the covenants and conditions contained in the mortgage.
On the same day, September 24, 1974, John Samford's business partner, Michael Danner, executed an agreement by which he agreed to convey unto Mrs. Samford and John Samford, in the event of foreclosure, interests in certain properties that he owned.
Gwendolyn Bell Samford died on December 3, 1974, less than three months after executing the mortgage, leaving a last will and testament. Under her will, Mrs. Samford left the residue of her estate, including her one-half interest in the Wright's Mill Road property, to the Bank as trustee for the four children, each child to receive his or her share free of trust at age thirty-five. The Bank managed the estate as one trust with no actual division or designation of any of the assets.
During the Bank's management of the estate, the estate taxes for the Gwendolyn Bell Samford estate were established and *Page 149 
paid, based upon the inclusion of Mrs. Samford's one-half interest in the Wright's Mill Road property in the estate. The estate also paid ad valorem taxes on this property.
On September 9, 1975, John Samford and Danner entered into an agreement by which John agreed to indemnify and hold Danner harmless from any personal liability on notes executed by the parties for loans made to the parties individually, including loans obtained from the First National Bank of Birmingham. The agreement further provided that John Samford was to use his best efforts to have Danner removed from any personal liability on notes executed by him to the First National Bank of Birmingham, to other banks, and to the estate of Mrs. Samford. In consideration for this, Danner basically transferred and assigned unto John all of his interest in their business venture, American Country Clubs, Inc.
The business did not prosper and, on November 19, 1976, the First National Bank of Birmingham foreclosed on the mortgage, which included the Wright's Mill Road property, as well as two lots in Opelika. The properties were bought in by the First National Bank of Birmingham for the sum of $290,757.48.
At some point in 1977, the Bank first devised a proposed distribution of the mother's estate. Each subsequent proposal was objected to by John, and no actual division or distribution was made. On January 15, 1981, the Bank filed its petition for final settlement of the mother's estate. Under the attached distribution scheme, the Bank proposed to distribute to each child the mother's one-half interest in the parcel of land in which the child had already received an undivided one-half interest by virtue of the distribution agreement of September 24, 1974. Al Byrne, vice president and trust officer of the Bank, explained the Bank's reasoning as follows:
 "It seemed to me when we were getting into the initial stages of Gwendolyn Samford's Estate, and looking at the pattern of distribution, that she made as an Executor and Trustee of Millard Samford's Estate, that it was her intention that eventually Mickey would end up with dominion and control over Gwen Mill Farm; and Wes would end up with dominion and control over Callahan Farm; and Bubba's trust would own the Harwell Place; and John would have dominion and control over Wright's Mill Road. That was her pattern. . . ."
Consequently, the Bank proposed to assign against John's share the one-half interest in the Wright's Mill Road property that had been lost to foreclosure in 1976. The Bank valued the interest in the property at $125,000, without assigning any mortgage encumbrance to the property.
On January 15, 1981, the Bank filed petitions requesting that the estates of the father and mother be removed from the Probate Court of Lee County to the Circuit Court of Lee County, which petitions were granted on January 20, 1981.
Joint hearings were held in both cases. After hearing ore tenus evidence without a jury, the trial court approved the concept of the proposed plans of distribution in each estate, but requested the Bank to file an updated proposed plan of distribution for consideration in Mrs. Samford's estate. John Samford filed an objection to the updated plan, alleging that such plan was not supported by the evidence, was contrary to law, and was contrary to any construction of his mother's will. A hearing was held on the objection, and after considering the evidence submitted ore tenus, the trial court overruled the objection and ordered the distribution of the assets as set forth in the updated plan. After denial of his motion for new trial, John Samford perfected this appeal. We affirm.
 SCOPE OF REVIEW
Where the evidence before the trial court is undisputed, the ore tenus rule is inapplicable, and the Supreme Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to those facts. Stiles v. Brown, 380 So.2d 792 (Ala. 1980); Kessler v.Stough, 361 So.2d 1048 (Ala. *Page 150 
1978). The facts before the trial court in the instant case were basically undisputed; the main thrust of the findings and order of the trial court was an application of law to those facts. That being the case, there is no presumption of correctness due to be accorded the findings of the trial court in the instant case.
Appellant John Samford first contends that, by mortgaging her interest in the Wright's Mill Road property to First National Bank of Birmingham, Mrs. Samford conferred a gratuitous benefit upon him which should be considered a gift or advancement and, therefore, not deductible from his share under his mother's will. We disagree.
To constitute a gift in this state, there must be a clear intention on the part of the donor to relinquish all present and future dominion over the property. White v. Sims, 295 Ala. 244, 326 So.2d 733 (1976). The law concerning advancements requires the same finding of a "gift," even though, for purposes of this case, we realize that the law of advancements is inapplicable, Mrs. Samford having died testate. See, Ala. Code 1975, § 43-3-30; Little v. Ennis, 207 Ala. 111, 92 So. 167
(1922).
Although the mortgaging of her one-half interest in the subject property by Mrs. Samford was certainly gratuitous and did, in fact, benefit John Samford, we do not find the requisite intent to relinquish future dominion over the property. Mrs. Samford retained an equity of redemption in the property and, had John been able to repay the indebtedness, the legal title would have revested in Mrs. Samford or her estate. Ala. Code 1975, § 35-10-26; Trauner v. Lowrey, 369 So.2d 531
(Ala. 1979). There was, therefore, no gift of Mrs. Samford's one-half interest in the Wright's Mill Road property to John simply by virtue of her mortgaging that interest for his benefit.
Appellant next contends that the benefit he incurred by his mortgaging her one-half interest in the subject property did not constitute a satisfaction because, under his mother's will, he was the legatee of a general legacy and, in this state, ademption by satisfaction applies only to specific legacies. Appellant has stated a correct principle of law; however, ademption by satisfaction requires a gift such that an article conveyed by will is not part of the testator's estate at the date of his death. Carter v. First National Bank of Opp,237 Ala. 47, 185 So. 361 (1938). This Court having previously found that no gift occurred, the equity of redemption existed in the mother's estate on the date of her death, precluding the possibility of a satisfaction.
Finally, appellant John Samford contends that because the equity of redemption, extinguished by foreclosure, did not exist on the date of distribution, the court erred in approving a plan of distribution that included the mother's interest in the Wright's Mill Road property in the assets available for distribution, in assessing the value of that interest at $125,000, and in charging that amount against his share under his mother's will. Appellant alleges that such an allocation constituted an abuse of discretion by the Bank in its duty to deal equally with the beneficiaries, and that such an allocation was arrived at only by looking beyond the four corners of an unambiguous will. Again, we recognize that appellant has cited correct general principles of law concerning the construction of a will. We find, however, that on the facts present in the instant case, such principles are not controlling.
We note the existence in this state of the equitable doctrine of retention, which provides that where, upon the death of a testator, a surviving legatee is indebted to the testator, that indebtedness becomes part of the assets of the estate in which all legatees should share, and the executor should apply, in the nature of a set-off, the indebtedness as a credit upon legatee's legacy under the will and, thus, effect a distribution of the entire estate. Kling v. Goodman, 236 Ala. 297,181 So. 745 (1938).
While we recognize that the gratuitous benefit bestowed upon John Samford *Page 151 
by his mother does not represent a literal "indebtedness" to her estate, the equities of the instant fact situation are no less present. John Samford initiated the partial distribution in an agreement contrary to the provisions of his father's will, of which his mother was executrix and trustee. He accepted the benefits of his mother's gratuitously mortgaging her one-half interest in the property he received under the partial distribution, a benefit for which the mother received no consideration. When he accepted those benefits, he did so with the realization of the possibility that the mortgage might be foreclosed upon. The mother could have given appellant her one-half interest in the Wright's Mill Road property outright. She did not choose to do so, and died with an equity of redemption in the one-half interest included in her estate.
The narrow facts presented in the instant case dictate that we find that, when John Samford received his one-half interest in the Wright's Mill Road property contrary to his father's will and accepted the gratuitous benefits from the mortgaging of the other one-half interest, he did so with the understanding that, if the possibility of foreclosure became a reality, the value of the mother's one-half interest would represent a further distribution to him under his mother's will. Thus, the appellant should now be estopped to complain of the Bank's allocation of assets according to his implied-in-fact agreement.
For these reasons, the order of the trial court upholding the Bank's proposed plan of distribution as updated is due to be affirmed.
AFFIRMED.
MADDOX, JONES, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., recused.