These are appeals from a declaratory judgment action seeking an injunction to prevent the enforcement of a noncompetition covenant. The trial court found that the covenant was overbroad, modified the covenant, and enjoined Central Bank of the South (Central) from enforcing the covenant except as modified. We reverse and remand.
The issues presented for review are whether the trial court erred in determining that the covenant was (1) not void, (2) overbroad in geographic scope, and (3) overbroad in duration. Additionally, Central asks this Court to clarify the trial court's meaning of the term "banking" as it is used in the court's order.
The covenant at issue in this case was a part of an acquisition agreement for a merger of First National Bank of Baldwin County (First National) at Fairhope and Central. At the time of the merger, John Beasley was an officer and director of First National. Beasley admitted that he signed the acquisition agreement containing the noncompetition covenant.
The covenant reads as follows:
 "10.2 Non-Competition. To induce Central Bank to enter into this Agreement, each of the First National directors and officers executing this Agreement agrees that for a period of two years after the later of (a) the Effective Date; or (b) the termination of employment or service of such officer or director from First National or the Continuing Bank, he will not, within Baldwin or Mobile Counties, Alabama, as principal, agent, trustee or through the agency of any corporation, partnership, association or agent or agency, engage in the business of banking and shall not (i) control or own (directly or indirectly) more than 5% of the outstanding capital stock of any corporation engaged in or controlling any such business having less than 500 shareholders, (ii) control or own (directly or indirectly) more than 5% of the outstanding capital stock of any corporation engaged in or controlling any such business having 500 or more shareholders (other than Central Bank or any of its affiliates), or (iii) serve as an officer, director or employee of any corporation, or as a member or employee of any partnership, or as an owner or employee of any other business, which directly or indirectly conducts a banking business within Baldwin or Mobile Counties, Alabama. In the event that the provisions of this Section 10.2 should be deemed to exceed the time or geographic limitations permitted by applicable law, then such provisions shall be reformed to the maximum time or geographic limitations permitted by applicable law." *Page 72 
When Beasley and the other First National directors signed the acquisition agreement on September 16, 1981, Beasley received $256,000 in exchange for his First National stock. The directors, who were all members of a voting trust, received dividends on their stock until the effective date of the agreement, May 15, 1982.
Beasley remained with Central at Fairhope after the merger as an officer and director until he terminated his employment on March 15, 1983. He then went to work for Farmers and Merchants Bank in Foley, approximately 20 miles from Fairhope. Foley and Fairhope are both located in Baldwin County. Central's president, Byrd Williams, notified Beasley that Central intended to enforce the noncompetition covenant of the acquisition agreement that he had signed. Beasley filed a motion for a preliminary injunction and instituted an action for a declaratory judgment and a permanent injunction to prevent enforcement of the agreement.
The trial court consolidated the hearing on the motion for preliminary relief with the trial on the merits. After the hearing, the court entered a decree finding that:
 "1. John Beasley received consideration for the Noncompetition Agreement made the subject of this lawsuit.
 "2. John Beasley is charged with knowledge of the terms of said Noncompetition Agreement.
 "3. That the Noncompetition Agreement is overbroad in geographic and time requirements, but is not invalid."
The trial court relied on First Alabama Bancshares, Inc. v.McGahey, 355 So.2d 681 (Ala. 1978), to find that the noncompetition agreement was not void. Beasley asserts that this Court wrongly interpreted Code of 1975, § 8-1-1 (b), inMcGahey. He contends that the covenant is void because it is not within the statutory exception of § 8-1-1 (b).
Section 8-1-1 provides the statutory requirements for covenants not to compete:
 "(a) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind otherwise than is provided by this section is to that extent void.
 "(b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein."
McGahey concerned a covenant not to compete resulting from a merger of First Alabama Bancshares (Bancshares) and Citizens Bank of Guntersville (Citizens). Bancshares attempted to enforce the covenant against a former director, president, and stockholder of Citizens who worked for the successor bank for a year after the merger.
First, this Court determined that an individual stockholder has a vendible interest in the good will of the corporation.
 "[T]he well-settled rule in Alabama [is] that the stockholders of a corporation are the equitable owners of its assets. Williams v. North Ala. Express, 263 Ala. 581, 83 So.2d 330 (1955). Therefore, because the good will of a corporation is a corporate asset, a stockholder is the equitable owner of that good will in the proportion that his shares bear to the total outstanding shares of stock in the corporation. . . ." 355 So.2d at 683.
We then concluded that the exchange of stock involved in a merger constitutes a "sale" of good will within the meaning of Tit. 9, § 23, Code (§ 8-1-1, Code of Ala. 1975).
 "The intent of the Legislature in passing § 23 was to protect purchasers of a business from prior entrepreneurs where the good will of that business is one of the assets purchased. . . . We perceive no set of circumstances more illustrative of the legislative purpose than the instant case. Here, a statewide corporation merged and acquired the assets of a local *Page 73 
banking institution. The utmost trust and personal faith is required of a banker by his customers. Obviously, then, the good will of Citizens Bank was an important asset acquired by Bancshares; and, therefore, Bancshares had a legitimate interest in preventing McGahey, who had helped establish and nourish that good will, from competing locally with it. The term `sale,' as included in Tit. 9, § 23, Code, must be interpreted to include a transfer or acquisition. No less-expansive interpretation could foster the legislative intent. . . ." (Citation omitted.) 355 So.2d at 683-84.
This Court rejects Beasley's contention that McGahey should be overruled as against public policy.
As applied to the present facts, McGahey compels the conclusion that Central acquired the goodwill of First National. The noncompetition covenant, therefore, falls within the § 8-1-1 (b) exception to the general rule of § 8-1-1 (a). The trial court correctly relied on McGahey.
The covenant in this case is not void, but it still must meet certain requirements of reasonableness:
(1) The employer must have a protectable interest;
(2) The time and place of the restriction must be reasonably related to that interest;
(3) The restriction must not impose undue hardship. DeVoe v.Cheatham, 413 So.2d 1141, 1142 (Ala. 1982).
The first requirement is met because Central has a legitimate interest in preventing competition which would undermine the goodwill it acquired in the merger. McGahey, supra, at 683-84.
The material facts concerning the time and place requirements are undisputed. "Where the evidence before the trial court is undisputed, the ore tenus rule is inapplicable, and the Supreme Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to thosefacts." Samford v. First Alabama Bank ofMontgomery, N.A., 431 So.2d 146, 149 (Ala. 1983).
As to the place requirement, Central proved that its market area includes all of Baldwin County[1] and that bank customers frequently follow bank officers with whom they have established business relationships when those officers move to other banks within the same market area. Beasley admitted that he is well-known in Baldwin County and has many customers in the banking industry.
The trial court ordered that Beasley be "prohibited by the terms of the Noncompetition Agreement from banking in any city, town or village in Baldwin County in which Central Bank of the South, as of the date of the Noncompetition Agreement, had a banking facility."
Central had no banking facility in Baldwin County at the time the noncompetition agreement was signed. At that time, Central had only an executory contract to acquire First National. The court's order is ambiguous, but it is not necessary to discern the trial court's intention because this Court holds that the trial court erred in modifying the covenant to apply to less than all of Baldwin County.
The covenant's two-year time limitation was due to begin "after the later of (a) the Effective Date; or (b) the termination of employment or service of such officer or director from First National or the Continuing Bank." The trial court modified this time requirement to run for two years from the effective date of the agreement, May 15, 1982, rather than the later date of Beasley's termination, March 15, 1983. The covenant as modified would allow a former First National director to remain with Central for two years after the effective date of the agreement and then go to work for a competing bank, taking Central's customers along with him, and decreasing the value of the goodwill he sold to Central. The *Page 74 
purpose of the time limitation is to prevent competition with former First National directors. The trial court's modification does not give effect to that purpose, because there is no competition until the director leaves Central's employment.
The two-year time period from Beasley's termination date is reasonably related to Central's interest in protecting its goodwill by allowing it to establish a working relationship with its customers. The trial court erred in finding the covenant overbroad in duration.
The final consideration is whether the covenant imposes an undue hardship:
 "[W]hether [the restraint necessary for the employer's protection] imposes on the employee any greater restraint than is reasonably necessary to secure to the business of the employer, or the good will thereof, such protection, regard being had to the injury which may result to the public from restraining the breach of the covenant, in the loss of the employee's service and skill and the danger of his becoming a charge upon the public. . . ."
Hill v. Rice, 259 Ala. 587, 592-93, 67 So.2d 789, 794 (1953) (cited in Cullman Broadcasting Co., Inc. v. Bosley,373 So.2d 830, 836 (Ala. 1979)).
Considering all of the circumstances, we cannot hold that Beasley will suffer undue hardship if the covenant is enforced according to its terms. As a former director and officer of First National, he bargained for and received over a quarter of a million dollars for his stock. He is free to accept employment in a bank outside of Baldwin County, or he can accept a nonbanking position within Baldwin County. On March 16, 1985, he will be totally free of the noncompetition covenant. We do not see how any lesser burden could be placed on Beasley without completely derogating both the covenant's purpose and its consideration.
The trial court's order did not specifically name all of the activities provided for in the covenant; it used merely the term "banking." "Banking" is defined in Black's Law Dictionary 133 (Rev. 5th Ed. 1979):
 "The business of banking as defined by law and custom, consists in the issue of notes payable on demand intended to circulate as money when the banks are banks of issue; in receiving deposits payable on demand; in discounting commercial paper; making loans of money on collateral security; buying and selling bills of exchange; negotiating loans, and dealing in negotiable securities issued by the government, state and national, and municipal and other corporations."
The definition of "banking" is broad enough to include, and the trial court clearly intended the term to include, the prohibited activities as they are stated in the covenant.
Based upon our conclusions and the authorities cited, the judgment is due to be, and it is hereby, reversed and the case is remanded for further proceedings consistent with the views expressed in this opinion.
REVERSED AND REMANDED.
MADDOX, JONES, EMBRY and ADAMS, JJ., concur.
[1] The covenant's restriction on geographic area covers Mobile and Baldwin counties. Central asks that this Court consider the restriction applicable only to Baldwin County.