584 So.2d 829 (1991)
CENTRAL BANCSHARES OF THE SOUTH, INC., and Central Bank of the South
v.
W. Dan PUCKETT and Terence C. Brannon.
89-1850.
Supreme Court of Alabama.
July 12, 1991.
Michael L. Edwards, John P. Scott, Jr. and Michael D. Freeman of Balch & Bingham, Birmingham, for appellants.
James W. Gewin and John E. Goodman of Bradley, Arant, Rose & White, Birmingham, for appellees.
STEAGALL, Justice.
W. Dan Puckett and Terence C. Brannon are former executive officers of Central Bancshares of the South, Inc., and Central Bank of the South (hereinafter referred to collectively as "Central Bank"); they were two of the bank's top five officers. Both men were considered, along with Paul Jones, for the position of chief executive officer in 1988. In early 1989, Harry Brock, a founder of Central Bank and its only C.E.O. up until that time, chose Paul Jones to succeed him as C.E.O.
Having been passed over for C.E.O., Puckett and Brannon began to discuss the possibility of owning their own bank. They contend that they wished to continue in Central Bank's employ; Brock and Jones recall that they wished to terminate their employment as soon as possible. On June 27, 1989, they were told that they must resign their offices with Central Bank. By letters dated July 7, 1989, Puckett and Brannon resigned.
On August 4, 1989, Puckett and Brannon sought a declaration of their rights and obligations under certain covenants not to compete that they had signed in connection with exercising stock options while employed by Central Bank. They challenged the validity of the covenants not to compete, claiming they were overbroad and unreasonable. Central Bank filed a counterclaim, seeking restitution of the profits Puckett and Brannon had realized from exercising stock options and seeking to enforce the covenants not to compete in the banking business.
Puckett and Brannon offered evidence at trial that in previous dealings Central Bank had defined its protectable interest as limited to a discreet number of identifiable customers. On June 5, 1990, the trial judge entered an order enjoining Puckett and *830 Brannon from soliciting business from any of Central Bank's customers and from soliciting any employees of Central Bank for the remainder of the two-year period ending July 7, 1991. The judge did not prohibit Puckett and Brannon from competing in the banking business within the state of Alabama, nor did he order them to pay restitution.
Subsequently, Puckett and Brannon filed a "Motion to Confirm Understanding of the Trial Judge's Order." The trial judge replied with an "Amendment to Order" in which he explained that Puckett and Brannon were enjoined from soliciting or causing any bank with which they may be associated to do business with any persons, firms, or corporations who were customers of Central Bank for the remainder of the two-year period ending July 7, 1991. The judge further explained that the word "customer" in his order was intended to include all customers of Central Bank as of July 7, 1989, not just those persons for whom Puckett and Brannon had had account responsibility. Central Bank appeals from the denial of its motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial, contending that the court also should have enjoined the employees from competing in the banking business anywhere in Alabama.
The covenants not to compete entered into by Puckett and Brannon with Central Bancshares on January 21, 1985, read, in pertinent part:
"(b) That the Optionee will not during the term of his employment with the Corporation and for a period of two years after termination for any reason of his employment with the Corporation or one or more of its subsidiaries, either individually or as an employee, agent, officer, director or shareholder or otherwise of or through any corporation, or other business organization, directly or indirectly:
"(i) Carry on or engage in a similar business or solicit or do business with any customer of the Corporation or any of its subsidiaries in any territory in which the Corporation or any of its subsidiaries has been conducting business; or
"(ii) Solicit any employee of the Corporation or any of its subsidiaries to leave their employment with the Corporation for any reason."
(Emphasis added.)
The enforceability of agreements by former employees not to compete is governed by Alabama Code 1975, § 8-1-1, which provides, in pertinent part:
"§ 8-1-1. Contracts restraining business void; exceptions.
"(a) Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void.
"(b) One who ... is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city or part thereof so long as the ... employer carries on a like business therein."
Contracts in restraint of trade are generally disfavored in Alabama as being against public policy, unless the contract comes within the exceptions set out in § 8-1-1(b) above:
"Contracts restraining employment are looked upon with disfavor, because they tend not only to deprive the public of efficient service, but tend to impoverish the individual. The courts will not specifically enforce, as of course, the naked terms of a negative covenant in a personal service contract restricting other employment, unless supporting the affirmative promise, the employer has a substantial right unique in his business which it is the office of the court to protect, and the restriction laid upon the employee has a reasonable relevancy to that result, and imposes no undue hardship."

Robinson v. Computer Servicenters, Inc., 346 So.2d 940, 943 (Ala.1977) (citations omitted; emphasis added). See, also, Devoe v. Cheatham, 413 So.2d 1141 (Ala.1982) *831 and James S. Kemper & Co. v. Cox & Associates, 434 So.2d 1380 (Ala.1983).
Nevertheless, the terms of a covenant not to compete will be enforced if:
"1. the employer has a protectable interest;
"2. the restriction is reasonably related to that interest;
"3. the restriction is reasonable in time and place;
"4. the restriction imposes no undue hardship on the employee."
James S. Kemper & Co. v. Cox & Associates, 434 So.2d at 1384 (citation omitted). See, also, Booth v. WPMI Television Co., 533 So.2d 209 (Ala.1988).
The trial court specifically found:
"Central has a protectable interest in its customer relations and also its relations with its employees....
"....
"The evidence presented indicates that Central is among the 4 largest banks within the State of Alabama and has developed and now provides a multitude of banking services which include many innovative marketing ideas."
While we agree with the trial judge that Central Bank has a protectable interest in its customer relations and relations with its employees, we do not agree that that protectable interest is limited to its customers and employees. As the trial judge indicated, Central Bank has a prominent position in the banking industry in the state of Alabama. Moreover, Brannon and Puckett, as key employees of Central Bank, had peculiar access to all of the techniques and strategies of the bank responsible for that position. "`[I]f an employee is in a position to gain confidential information, access to secret lists, or to develop a close relationship with clients, the employer may have a protectable interest.'" James S. Kemper & Co. v. Cox & Associates, 434 So.2d at 1384, quoting Devoe v. Cheatham, 413 So.2d at 1143.
We find that the restriction regarding competition in the banking business is reasonably related to Central Bank's protectable interest, because the restriction is designed to protect Central Bank only in the area in which it has a legitimate interest: the banking industry. The agreement specifically prohibits Brannon and Puckett from competing in the banking business; it does not preclude Brannon and Puckett from pursuing work outside of banking. As this Court stated in Cullman Broadcasting Co. v. Bosley, 373 So.2d 830, 835 (Ala.1979):
"If the employer was trying to prevent its former employee from working as a janitor with a competitor, we might be faced with the prospect of striking down an unreasonable limitation or restriction. In this case, however, the employer is seeking to restrain a radio announcer from announcing on a rival radio station. Thus, the employment sought to be restrained is essentially the same job the employee previously performed and under these circumstances, the limitation is not unreasonable."
Similarly, in the context of the present case, we do not find the limitation on competing in the banking business to be unreasonable. Indeed, in Central Bank of the South v. Beasley, 439 So.2d 70 (Ala.1983), and First Alabama Bancshares, Inc. v. McGahey, 355 So.2d 681 (Ala.1977), this Court enforced restrictions on competition within the banking business with regard to two former bank branch officers. Those restrictions were for periods of two years and five years. A two-year restriction period was also held to be reasonable in James S. Kemper & Co. v. Cox & Associates, supra.
Here, the very nature of the positions Brannon and Puckett held at Central Bank warrants the same conclusion as in the above-cited cases. If a two-year limitation is reasonable as applied to branch officers, it is certainly reasonable with regard to two of the bank's top five officers. To hold otherwise would be inconsistent.
Likewise, even though the agreement here restricts competition "in any territory in which the Corporation or any of its subsidiaries has been conducting business," Central Bank argues in its brief that Brannon and Puckett should be restricted from *832 competing with it only in Alabama. Such a statewide limitation was held to be reasonable in James S. Kemper & Co. v. Cox & Associates with regard to an insurance agent:
"To enforce the covenant in this case on a statewide basis would be consistent with this court's ruling in Parker v. Ebsco Industries, Inc., 282 Ala. 98, 209 So.2d 383 (1968), that the territory of a covenant not to compete may properly include part of Alabama, all of Alabama, or `more territory than the state of Alabama,' depending on the circumstances. Such enforcement would also be in accord with decisions of other jurisdictions that have held the territory in which an insurance agent's covenant not to compete is enforceable to be an entire state, or more generally, the area in which the agent was active for the insurance company."
434 So.2d at 1385 (citations omitted).
Finally, the record establishes that Brannon and Puckett were more than adequately compensated for agreeing not to compete, because they received $1,808,767.97 and $814,550.98, respectively, through the exercise of their stock options. We find language in Central Bank of the South v. Beasley, 439 So.2d at 74, concerning the element of undue hardship, particularly instructive:
"Considering all of the circumstances, we cannot hold that Beasley will suffer undue hardship if the covenant is enforced according to its terms. As a former director and officer of First National, he bargained for and received over a quarter of a million dollars for his stock. He is free to accept employment in a bank outside of Baldwin County, or he can accept a nonbanking position within Baldwin County. On March 16, 1985, he will be totally free of the noncompetition covenant. We do not see how any lesser burden could be placed on Beasley without completely derogating both the covenant's purpose and its consideration."
Although this was a nonjury case and the evidence was presented ore tenus, we conclude, after reviewing the record, as well as the applicable law, that the trial judge erred in failing to enforce the covenant not to compete in its entirety and, consequently, that the judgment entered was clearly erroneous. We hold that the restrictions contained in the agreement regarding customer and employee relations, as well as the agreement not to carry on or engage in a similar business, are valid and enforceable within the state of Alabama.[1] We pretermit any consideration of the other issues raised on appeal. Thus, Central Bank was entitled to the relief it sought.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, ADAMS and KENNEDY, JJ., concur.
SHORES and INGRAM, JJ., dissent.
HOUSTON, J., recused.
SHORES, Justice (dissenting).
I dissent. I would affirm the trial judge's order, because it protects the legitimate interest that Central Bank possesses in its customer and employee relationships and does not illegally restrain Brannon and Puckett from exercising their lawful business endeavors.
The trial judge found that Central Bank has a protectable interest in this case, limited to protection against interference with the bank's customers and employees. He said:
"This Court agrees that Central has a protectable interest in its customer relations and also its relations with its employees. However, if Brannon and Puckett agree and are required by this Court to refrain from soliciting customers from Central for a period of 2 years until July 7, 1991, and to also refrain from hiring employees of Central during the same period, Central will have achieved sufficient protection of its relations with its customers and employees from interference by Brannon and Puckett." *833 I agree with the trial court's assessment that this was a sufficient limitation to protect Central Bank's interest.
The majority has held that Central Bank has a protectable interest beyond its employees and customers. The majority finds that "the restriction regarding competition in the banking business is reasonably related to Central Bank's protectable interest, because the restriction is designed to protect Central Bank only in the area in which it has a legitimate interest: the banking industry." The majority believes Central Bank's claim that Brannon and Puckett have an intimate knowledge of Central Bank's techniques and strategies, and that they agreed, by signing the covenant not to compete, not to use this particular expertise by going into the banking business.
The trial judge, who heard the ore tenus testimony, determined that this claim is not borne out by the record:
"The evidence presented indicates that Central is among the 4 largest banks within the State of Alabama and has developed and now provides a multitude of banking services which include many innovative marketing ideas....
"However, none of the services developed and offered by Central is unique to it. Every service offered by Central is also offered by a number of other banks and institutions. Central has itself referred to the intense competition which it faces in strong terms....
"....
"Central argues that because Brannon and Puckett had access to Central's short- and long-range plans and banking strategy as well as customer, product, and marketing information, it has a protectable interest in preventing Brannon and Puckett from engaging in the banking business anywhere in Alabama.
"This Court disagrees with the premise that information concerning Central's products and marketing strategies are secret or incapable of being duplicated. As for short- and long-range plans, a period of approximately 11 months has now elapsed since either Brannon or Puckett had access to any short- or long range plans contemplated by Central.
"....
"Brannon and Puckett do have outstanding abilities and knowledge regarding the operation of a bank. However, such abilities and knowledge were developed by them as a result of their intelligence, diligence and experience. This Court concludes that had Brannon and Puckett worked for any other bank, they would have developed equally as well those same skills and abilities which they have now. Central is not able to prove that other banks in competition with Central do not have officers and employees with similar skills and abilities. Leaving to one side any special relationships with customers and employees, this Court concludes that there is no evidence that Brannon and Puckett in operating a new bank will provide any competition which will be stronger or more effective than that already in place from other banks and institutions."
I have carefully reviewed the record in this case, and I agree with the trial court's findings that none of the services developed and offered by Central Bank is unique to it, because every service offered by Central Bank is also offered by a number of other banks and institutions. Thus, there is no protectable interest in these employees' knowledge of those services. The testimony of various witnesses, including those called by Central Bank, established that new programs and products are routinely advertised to the public and that the advertising reveals the marketing strategy. Eleanor Strickland, Central Bank's vice president for marketing research and advertising, testified that a bank's advertising about its products reveals the bank's marketing strategy as of the time the product is introduced. The testimony revealed that it is common practice for Central Bank employees to "shop" at competitive banks in order to gain information about products and that the regulators of the banking industry and others publish information that describes banking practices of all banks in the country. Bankers from different banks (including Central Bank) meet *834 periodically and exchange information. The testimony supports the decision of the trial court, not that of the majority.
This case was tried ore tenus.
"Under the `ore tenus rule,' a presumption of correctness accompanies the trial court's judgment when it has made findings of fact based on oral testimony without a jury, and its judgment will not be reversed unless it is shown to be plainly and palpably wrong, considering all of the evidence and all inferences that can be logically drawn from the evidence. King v. Travelers Ins. Co., 513 So.2d 1023 (Ala.1987); McCrary v. Butler, 540 So.2d 736 (Ala.1989). The trial court's judgment in such a case will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment. McCrary v. Butler, supra; Jones v. Jones, 470 So.2d 1207 (Ala.1985)."
Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 12-13 (Ala.1989). It is clear that there was credible evidence to support the judgment of the trial court.
The majority states that the contract "does not preclude Brannon and Puckett from pursuing work outside of banking." However, banking is the work they know, and to restrict them from competing in the banking business clearly imposes an undue hardship upon them, in violation of our holding in James S. Kemper & Co. v. Cox & Associates, 434 So.2d at 1384.
For the reasons stated above, I respectfully dissent.
INGRAM, J., concurs.
NOTES
[1] As noted earlier, Central Bank seeks to enforce the agreement only statewide.