### Gary OLANDER, Plaintiff,

v.

### COMPASS BANK AND COMPASS BANCSHARES, INC., Defendants.

### No. H–01–2184.

United States District Court, S.D. Texas, Houston Division.

Oct. 18, 2001.

---

848

Neil Martin, Gardere & Wynne, Houston, for Compass Bank, Compass Bancshares Inc, defendants.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

This employment dispute concerns a non-compete clause in a contract between Plaintiff Gary Olander and Defendants Compass Bank and Compass Bancshares, Inc. (collectively, "Compass"). This case is before the Court on Defendants' Application for Preliminary Injunction [Doc. # 5]. Plaintiff Gary Olander filed a Response to Compass's Application [Doc. # 9].[1] Whitney National Bank ("Whitney"), Olander's new employer, was permitted to intervene. *See* Order entered September 26, 2001 [Doc. # 15]. Whitney has filed a Brief on Invalidity of Compass's Covenant Not to Compete [Doc. # 17], to which Compass has responded (*see* Response to Whitney's Brief [Doc. # 22] ). The Court held an evidentiary hearing for several hours on October 9 and 10, 2001.

Having considered the parties' briefs and exhibits thereto, the evidence and argument presented at the preliminary injunction hearing, all matters of record, and applicable legal authorities, the Court concludes that Compass's Application for Preliminary Injunction should be **denied.**

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff Gary Olander worked in mortgage lending for Compass Bank in Houston from 1988 until he voluntarily resigned in June 2001. At the time he left Compass, Olander was an Executive Vice President in the real estate lending department.

Gregg M Rosenberg, Gregg M Rosenberg & Associates, Houston, TX, for Gary M Olander, plaintiff.

Sherrard L Hayes, Fulbright & Jaworski, Austin, TX, for Whitney National Bank, intervenor-plaintiff.

1. In addition to objecting to the Application for Preliminary Injunction, Olander moved, based on the same evidence and authority, for summary judgment declaring the provisions invalid [*see* Doc. # 9]. However, Olander's counsel withdrew the Motion during an informal conference with the Court. Compass therefore did not respond to Olander's Motion. Olander may re-urge his Motion for Summary Judgment when he deems appropriate.

Compass considered Olander a highly valued employee. The parties agree that Olander developed personal goodwill and enhanced the bank's goodwill during his tenure at Compass. During 2001, Olander became dissatisfied with his compensation and certain personnel policies at Compass. In June 2001, Olander left Compass's employ and took a position with Whitney to head up its fledgling real estate lending group. Olander has responsibilities at Whitney similar to those he had at Compass.

Every year since 1990, Olander and Compass entered into stock option agreements giving Olander the right to purchase designated numbers of shares of Compass Common Stock, on a specified schedule at a set price. The stock options were intended to reward employees who were contributing to Compass's continuing success in the financial marketplace, and were designed to assist in retaining valued employees.

Beginning in 1994, the stock option agreements contained non-compete clauses. The two stock option agreements at issue in this case are dated February 21, 2000 (the "2000 Agreement") and February 23, 2001 (the "2001 Agreement"). The options granted under both the 2000 and 2001 Agreements were exercisable only during Olander's employment with Compass, or upon Olander's death, or disability, or the sale of the bank.[2] The parties have stipulated that Olander was an at-will employee of Compass at all times.

The non-compete clauses in the Agreements are extensive. Paragraph 8 of the 2000 Agreement bars Olander (the "Employee") for a period of two years from directly or indirectly soliciting (i) any Compass customer "called on, serviced by, contracted by the Employee in any capaci-

ty, or otherwise known to the Employee in any territory in which [Compass] has been or is conducting business;" or (ii) any employee at Compass or any former employee who leaves Compass's employment for any reason.

The non-compete clause of the 2001 Agreement bars Olander, for two years, from (i) carrying on or engaging in a business like or similar to any business of Compass in any territory in which Compass has been or is conducting business; (ii) soliciting or doing business with any Compass customer in any territory in which Compass has been or is conducting business; or (iii) soliciting any employee of Compass to leave their employment for any reason.

The 2000 and 2001 Agreements also contain provisions obligating Olander not to divulge, furnish or make accessible to any third party any trade secrets, customer lists, information regarding customers, or other confidential information concerning Compass or its business, including without limitation confidential methods of operation and organization, trade secrets, confidential matters related to pricing, markups, commissions and customer lists. However, neither Agreement contains a corresponding promise from Compass that it will provide confidential information to Olander.

Compass contends that during Olander's thirteen years at the bank Olander had frequent access to various confidential information and participated in high-level management meetings at which confidential information was discussed. The evidence establishes that in the course of his duties, Olander received information related to bank operations and management (credit guidelines, banking procedures, profitability models, budgets, marketing

---

**2.** Paragraph 2(c) of the Agreements provides that exercise of a stock option shall be by written notice to Compass. There is no evidence in the record as to whether the exercise is effective as of the notice date or some future approval date.

strategies, business development plans, funding mechanisms, and securitization plans and strategies), specific loans and customers (customer loan balances, repayment schedules, customer lists, loan payment histories, risk ratings on loans and specific customers, "past-due" reports, "watch" lists, and loan exception reports), and personnel information (salaries and bonuses of relationship managers and others). Olander does not agree with Compass's characterization of all of this information as confidential, but concedes that he had regular and continuous access to certain confidential information, such as current customer loan balances, customer risk ratings, "past-due" reports on loan performance and employee salaries. There is no evidence that Olander wrongfully took confidential information from Compass, such as unpublished bank operation data or strategy plans, or has wrongfully divulged confidential information to Whitney.

After resigning from Compass in June 2001, Olander filed a declaratory judgment action in state court against Compass seeking a declaration that the non-compete provisions of the 2000 and 2001 Agreements are invalid and unenforceable. Compass removed the suit to federal court in July 2001 based on diversity of citizenship. Compass filed its Application for Preliminary Injunction shortly thereafter. Whitney sought and was granted leave to intervene as a Plaintiff in this case and filed its own declaratory judgment action.[3]

## II. *LEGAL STANDARDS*

### A. Preliminary Injunction Standards

A preliminary injunction is an extraordinary and drastic remedy that is not to be granted routinely; a preliminary injunction should issue only when the movant, by a clear showing, carries the burden of persuasion. *Harris County v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 312 (5th Cir.1999) (internal quotations and citations omitted). To obtain injunctive relief, the movant must establish four requirements:

> First, the movant must establish a substantial likelihood of success on the merits. Second, there must be a substantial threat of irreparable injury if the injunction is not granted. Third, the threatened injury to the [movant] must outweigh the threatened injury to the [opponent]. Fourth, the granting of the preliminary injunction must not disserve the public interest.

*Evergreen Presbyterian Ministries, Inc. v. Hood*, 235 F.3d 908, 918 (5th Cir.2000) (internal citations omitted); see also *Texas Catastrophe Property Ins. Ass'n v. Morales*, 975 F.2d 1178, 1180 (5th Cir.1992). In order to secure a preliminary injunction, the applicant must establish each of the preliminary injunction elements. *See Black Fire Fighters Assoc. of Dallas v. City of Dallas, Tex.*, 905 F.2d 63, 65 (5th Cir.1990). The decision to grant or deny a preliminary injunction is within the discretion of the Court. *CarMax Auto Superstores, Inc.*, 177 F.3d at 312.[4]

---

3. Because Whitney's interests are closely aligned with Olander in this case, the Court deems Whitney to have intervened as a Plaintiff in this action.

4. Compass argues, citing *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 2001 WL 699935 (Tex.App.-Houston [1st Dist.] 2001, n.p.h.) (unpublished), that it does not need to show irreparable harm in order to prevail on its request for a preliminary injunction. Sec-

tion 15.52 of the Texas Business and Commerce Code ("TBCC") provides that the criteria of TBCC § 15.50 and the remedies of TBCC § 15.51 are exclusive, preempting any other criteria or remedies. Notwithstanding the TBCC, this Federal Court would be extremely reluctant to grant a preliminary injunction without finding that each element set forth by the Fifth Circuit for such relief were satisfied. *Cf. Amerispec, Inc. v. Metro Inspection Serv., Inc.*, 2001 WL 770999, *2-6

## B. Enforceability of Non–Compete Clauses

 The enforceability of a covenant not to compete is regulated by Texas statute and presents a question of law for the court. TEX. BUS. & COM. CODE §§ 15.50, 15.52 (Vernon Supp.2001); *see Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642, 644 (Tex.1994); *CRC–Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 263 (Tex.App.-Hous.1996) (no writ). "Section 15.50 provides two criteria for the enforceability of a covenant not to compete: the covenant (1) must be ancillary to or part of an otherwise enforceable agreement at the time the agreement is made, and (2) must contain limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." *Light*, 883 S.W.2d at 644. A provision restricting solicitation of former employees and customers restrains trade and constitutes a covenant not to compete. *See Miller Paper v. Roberts Paper Co.*, 901 S.W.2d 593, 599 (Tex.App.-Amarillo 1995, no writ).

 Non-compete clauses signed by at-will employees generally are not enforceable if they are conditioned on continued employment, because such a promise is illusory.[5] *Travel Masters, Inc. v. Star Tours, Inc.* 827 S.W.2d 830 (Tex.1991). "Any promise made by either employer or employee that depends on an additional period of employment is illusory because it is conditioned upon something that is exclusively within the control of the promisor." *Light*, 883 S.W.2d at 645 n. 5. However, if an employer provides some legally cognizable consideration, then obligations assumed by the employee may be enforceable. "Under Section 15.50, the relevant point in time is the moment the agreement is made; the issue is whether, 'at the time the agreement is made,' there exists [sic] other mutually binding promises to which the covenant not to compete is ancillary or part and parcel." *CRC–Evans Pipeline Int'l, Inc.*, 927 S.W.2d at 263 (internal emphasis and quotations omitted).

In *Light*, Centel hired the defendant ex-employee under an at-will contract that did not contain a non-compete clause. The consideration for this original contract consisted of the employer's promise to provide specialized training in return for the employee's promises to give fourteen days notice of termination and to provide an inventory of the employer's property before she left the company. Two years later, the employee signed a non-compete agreement in return for the employer's consideration of continued employment and the opportunity to sell different products. *Id.* at 643. The Texas Supreme Court held that the non-compete agreement, standing alone, was unenforceable because Centel's only promises, at-will employment and the opportunity to sell new products, were wholly dependent upon Centel's illusory promise of continued employment. *See id.* at 645–46. The Su-

(N.D.Tex.2001) (applying traditional preliminary injunction standards in granting in part and denying in part employer's request for preliminary injunction to enforce a covenant not to compete contained in a franchise agreement). It is not necessary to definitively decide, however, whether the rule embodied in TBCC § 15.52 is procedural or substantive, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), because the non-compete provisions of Olander's con-

tracts with Compass do not meet the criteria of TBCC § 15.50, for the reasons explained in the rest of this opinion. The Court also need not address the remaining federal preliminary injunction elements.

5. It follows accordingly that unenforceable contracts to compete cannot form the basis of actions for tortious interference. *Travel Masters, Inc.*, 827 S.W.2d at 832.

preme Court further held that although the original employment contract was an "otherwise enforceable agreement," based on Centel's non-illusory promise to provide initial training, the covenant not to compete was not "ancillary" to that contract. *Id.* at 646–47.

■■■ The Texas Supreme Court explained the meaning of the phrase "ancillary to an otherwise enforceable contract" in *Light.*[6] In order for the non-compete agreement to be ancillary to the valid contract, it must be designed to enforce a contractual obligation of one of the parties. *Id.* at 647 (following Justice Steven's dissent in *Business Elec. v. Sharp Elec.,* 485 U.S. 717, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988)). In other words, "(1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and (2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement." *Id.* In *Light,* the court found that the non-compete clause was not designed to enforce the employee's promises to give notice and supply an inventory before leaving the company, and was therefore unenforceable. *Id.*

■■■ Under Texas law, employees' non-disclosure provisions are more readily enforced than non-compete covenants because the non-disclosure provisions are not restraints on trade, they do not prevent the employee from making use of the general experience he acquired during em-

ployment, and they do not offend public policy. *CRC–Evans Pipeline Int'l, Inc.,* 927 S.W.2d at 265; *see Zep Mfg. Co. v. Harthcock,* 824 S.W.2d 654, 663 (Tex.App.-Dallas 1992, no writ).

## III. ANALYSIS

Olander and Whitney argue that because Olander was an at-will employee, the non-compete provisions are invalid and unenforceable because they are not ancillary to an otherwise enforceable contract. Because Olander could be terminated at any time, he argues, Compass's promise of stock options was illusory. Moreover, Plaintiff and Intervenor argue, even if the stock options are not illusory, they do not give rise to an interest in restraining Olander from competing with Compass, and thus fail to satisfy the *Light* test. Finally, Plaintiff and Intervenor argue that the non-compete provisions are not ancillary to otherwise enforceable confidentiality provisions in the 2000 and 2001 Agreements because Compass did not provide consideration in the form of a promise to provide confidential information at the time the Agreements were signed.

### A. Compass's Likelihood of Success on the Merits: Enforcing the Non–Compete Provisions

As discussed in section II.B *supra,* determining the validity of a non-compete provision is a two-part process. First, the Court must determine if an "otherwise enforceable agreement" exists. If so, the Court must determine under Texas law whether the non-compete is "ancillary to or part of" that otherwise enforceable agreement.[7]

6. The *Light* court did not specifically define what it means for a non-compete provision to be "part of" an otherwise enforceable agreement, but interpreted the phrase "to mean more than merely in the same instrument because such a literal reading renders the phrase 'at the time the agreement is made' redundant." *Light,* 883 S.W.2d at 647 n. 12.

7. In support of its position, Compass cites *Central Bancshares of the South, Inc. v. Puckett,* 584 So.2d 829 (Ala.1991), which enforced a non-compete clause like the one at issue here. A review of *Puckett* reveals that the standard under Alabama law for enforcing a non-compete provision is significantly less burdensome than the Texas rules. Under Ala-

### 1. *An Otherwise Enforceable Agreement*

*Compass's Stock Options.*–In this case, Compass gave Olander stock options as consideration for his continued loyalty and diligence as an employee, his promise not to divulge confidential information, and his promise not to compete with Compass in specified ways for a specified period of time after termination of his employment with Compass.

■ Generally, an at-will employment contract cannot be an "otherwise enforceable agreement" under *Light* because the promise of at-will employment is illusory. However, an at-will employment relationship may give rise to an otherwise enforceable agreement as long as independent, non-illusory consideration is given in exchange for the employee's promise. *Curtis v. Ziff Energy Group, Ltd.*, 12 S.W.3d 114, 118 (Tex.App.-Houston [14th Dist.] 2000, n.p.h.). Plaintiffs argue that because Olander was an at-will employee, all promises made by Compass in the Agreements are illusory. Compass contends that its promise to grant valuable stock options was not illusory because a portion of the options was available to Olander the day he signed the contract and the options had value on the day Olander was granted the options, whether they were exercised or not. Compass also contends that its promise as to stock options was not illusory because it agreed to honor the options upon Olander's death or disability or upon the sale of the company, conditions not wholly within Compass's control.

■ The Court cannot determine on the existing evidentiary record whether, at the moment of signing the Agreements, Olander could have immediately exercised, and had vested rights in, the options irrespective of continued future employment.[8] It is not necessary, however, for purposes of the preliminary injunction analysis, to rule on the issue of whether or not the stock options granted by Compass to an at-will employee are illusory. Even if the options granted in the 2000 and 2001 Agreements constitute otherwise enforceable agreements,[9] the non-compete provisions may be enforced only if Compass's grant of these options gives rise to an

bama law, a covenant not to compete will be enforced if:
1. the employer has a protectable interest;
2. the restriction is reasonably related to that interest;
3. the restriction is reasonable in time and place;
4. the restriction imposes no undue hardship on the employee.

*Puckett*, 584 So.2d at 831. Thus, *Puckett* does not provide authority for the enforcement of the non-compete provisions under Texas law. Similarly, other non-Texas cases cited by Compass, *Field v. Alexander & Alexander of Ind., Inc.*, 503 N.E.2d 627, 630–32 (Ind.App. 1987) and *Wainwright's Travel Serv. v. Schmolk*, 347 Pa.Super. 199, 500 A.2d 476, 478 (1985), do not apply rules comparable to those applicable under Texas law.

8. To the extent Compass is deemed to have the burden of proof to show entitlement to a preliminary injunction in this federal court, and thus bears the responsibility to show a substantial likelihood of success, Compass has failed to meet its burden in this regard. *See supra* note 4 and *infra* note 13.

Whitney argues that even if this instantaneous exercise were possible under the Agreements, the grant of options was illusory consideration because Olander's employment was at-will. The Court does not necessarily accept this proposition. However, the Court need not, and does not, decide the issue.

9. It is noted that, although it is true that Compass's promises to allow exercise of options upon Olander's death or disability represent conditions for performance that are not entirely within Compass's control, Olander did not meet either of these criteria at the time he signed the Agreements. Thus, at the moment of signing, it was possible that his employment could have been terminated prior to his death or disability. *See infra* discussion in the text, at 13.

interest in restraining Olander from competing. This matter is discussed *infra* in section III.B.2, at 14–15.

***The Confidentiality Clause.***–In certain situations, a non-compete may be ancillary to an otherwise enforceable confidentiality provision and thus enforceable against a former employee. *Light*, 883 S.W.2d at 647 n. 14.[10] *See also Curtis*, 12 S.W.3d at 118 (finding non-illusory a promise to provide confidential information and trade secrets in return for promise not to disclose or use the trade secrets after employment). However the enforceability of non-compete clauses in such situations is premised on the employer's promise to provide confidential information at the time the parties enter the agreement.

■■■ In this case, the confidentiality provisions at issue did not obligate Compass to provide any confidential information in exchange for Olander's promise. The fact that Compass in fact did provide confidential information does not transform the illusory promise under Texas law into otherwise enforceable consideration to support the non-compete provision.[11] Even if the confidentiality provisions are currently enforceable, the non-compete provision must be evaluated *as of the time* *it was made;* prior or future performance by Compass does not suffice. *CRC–Evans Pipeline Int'l, Inc.*, 927 S.W.2d at 263–64; *see also Ad Com, Inc. v. Helms*, 2000 WL 45880, *3–4 (Tex.App.-Dallas 2000, n.p.h.) (unpublished) (finding non-compete unenforceable because employer did not make a promise to provide confidential information in the express language of the agreement). Thus, the confidentiality provisions contained in the 2000 and 2001 Agreements are not "otherwise enforceable agreements" for purposes of enforcing the non-compete provisions contained in those Agreements under Texas law.

## 2. Ancillary to or Part of An Otherwise Enforceable Agreement

As discussed above, the Texas Supreme Court has set out a two-part test for determining whether a non-compete provision is ancillary to or part of an otherwise enforceable agreement:

1. the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and

2. the covenant given by the employee must be designed to enforce the em-

---

**10.** The Texas Supreme Court stated:

[I]f an employer gives an employee confidential and proprietary information or trade secrets in exchange for the employee's promise not to disclose them, and the parties enter into a covenant not to compete, the covenant is ancillary to an otherwise enforceable agreement because: (1) the consideration given by the employer [the trade secrets] in the otherwise enforceable agreement [exchange of trade secrets for promise not to disclose] must give rise to the employer's interest in restraining the employee from competing [employer has interest in restraining employee with knowledge of employer's trade secrets from competing] and (2) the covenant must be designed to enforce the employee's consideration or return promise [the promise not to disclose the trade secrets] in the otherwise enforceable agreement."

*Light*, 883 S.W.2d at 647 n. 14.

**11.** Compass argues, based on its reading of footnote 6 of the *Light* opinion, that it accepted, through performance (by provision of confidential information), Olander's offer to maintain confidentiality and to abide by the non-compete agreement. *Light* does not support Compass's argument. Footnote 6 describes ways in which an employer can create an enforceable contract with an at-will employee. It does not stand for the proposition that a unilateral contract formed when an employer accepts an employee's offer by performance supports enforcement of a covenant not to compete. *Light*, 883 S.W.2d at 645 n. 6.

ployee's consideration or return promise in the otherwise enforceable agreement.

See Light, 883 S.W.2d at 647.

■■■ **Employer's Promise and Interest.**–The focus under the first of the above elements is the consideration given by the employer, in this case, Compass, to the employee sought to be restrained. Compass concedes that the only consideration expressly provided for under either Agreement is its promise to grant stock options.[12] Compass has not articulated any coherent theory explaining how Compass's promise to Olander, i.e., to grant the right to buy stock at a set price during his employment, gives rise to an interest in restraining Olander from competing after he has left Compass's employ. Compass repeatedly points out that it has goodwill and business interests that are worthy of protection. While true, Compass has not demonstrated how the consideration of stock options "gives rise to" these interests Compass seeks to protect. Nor has Compass established how the stock options "give rise" to Compass's interest in restraining Olander from competing with Compass. The Court does not rule that a stock option agreement can never give rise to an interest in restraining competition; rather, the Court finds that no interest in restraining Olander in his post-Compass employment has been shown to arise from Compass's grant of the stock options in the Agreements in this case.

Having determined that the non-compete provision at issue fails the first prong of Light's "ancillary" analysis, the Court concludes that the requirements of TBCC

§ 15.50 have not been met, and therefore the non-compete provisions in the 2000 and 2001 Agreements are not enforceable on this record.[13] Compass has therefore failed to demonstrate likelihood of success on the merits of its claim, and thus has failed to show itself entitled to a preliminary injunction.

**Employee's Promises.**–Since the non-compete provision does not satisfy the first prong of the Light "ancillary" analysis, the provision is unenforceable even if the second prong is satisfied. Thus, even if Olander's promise not to compete was designed to enforce his promise not to divulge confidential information, this Court could not enforce the covenant not-to-compete in the Agreements.

In summary, because the non-compete provisions at issue in this case are not ancillary to or part of an otherwise enforceable agreement, Compass is not entitled to a preliminary injunction prohibiting Olander from breaching those provisions.

## C. Injunction Enforcing The Confidentiality Provisions

■■■ Compass has also asked for a preliminary injunction prohibiting Olander from breaching his obligation to maintain the confidentiality of information he obtained from Compass. Although the Court has found that Compass's provision of confidential information to Olander does not support enforcement of the non-compete provisions, it does not necessarily follow that the confidentiality agreement itself is unenforceable. See CRC–Evans Pipeline Int'l, Inc., 927 S.W.2d at 265 (analysis of

---

**12.** As noted above, Compass did not give consideration in the form of a promise to provide confidential information at the time the Agreements were made. Therefore, under Light, the non-compete provisions cannot be ancillary to an otherwise enforceable confidentiality agreement.

**13.** The parties disagree as to who has the burden of proof. The Court declines to resolve that issue at this time. The rulings herein are dictated by the undisputed facts and the outcome is not altered by the placement of burden of persuasion.

non-disclosure provision, unlike a non-competition provision, is not confined to the time the agreement is made). Indeed, the Court has undertaken a separate analysis of this issue. Since it is Compass that seeks preliminary injunctive relief, Compass bears the burden of proof.

There is no evidence that Olander has breached his confidentiality obligations under paragraph 8(c) of the 2000 and 2001 Agreements in any way.[14] Olander testified that since starting his job with Whitney he has been approached by and made loans to customers he worked with at Compass. Olander also admits he draws on his experience at Compass in his current job by taking advantage of working relationships developed while at Compass and his personal knowledge of customers' reputations in the industry. These facts alone, however, do not establish his use of confidential Compass information. The evidence is uncontroverted that the identity of Compass borrowers, credit histories of potential customers and information on materially delinquent loans are readily available from credit reports and other public records. That type of information is not proprietary to Compass. Olander also testified that Whitney has its own loan procedures and guidelines that he follows in approving any loan. It is also uncontroverted that Olander, prior to approving a

loan, does a full investigation of the financial condition and history of the borrower, based on information provided by the customer and Olander's independent investigation with the customer's approval.

Further, there is no evidence that Olander has divulged truly confidential Compass information, such as bank management and operations policies, marketing or business development strategies or Compass employees' personnel information.[15] Lee Cutrone, the City President for Compass Bank in Houston, testified that he could only speculate as to whether Olander used any confidential information in his dealings with customers or other banking professionals. Therefore, the record does not establish Compass's likelihood of success on the merits of a claim against Olander for breach of contract.[16]

## IV. CONCLUSION AND ORDER

The Court concludes that the non-compete provisions contained in paragraphs 8(a) and 8(b) of the 2000 and 2001 Agreements between Compass and Olander are not ancillary to or part of an otherwise enforceable agreement as required by Texas law, and are therefore unenforceable. The Court further concludes that there is no evidence that Olander has breached his

---

14. The Court assumes for the purposes of this Motion that the confidentiality pledge in the 2000 and 2001 Agreements by Olander is an enforceable promise given in exchange for Compass's granting him the stock options, some of which he apparently exercised.

15. There is evidence that after he left Compass, Olander possessed certain confidential information regarding other employees' salaries and bonuses because a sheet containing this information was attached by Compass staff to the copy of his personnel records provided to him at his request. Olander did not improperly take the information. Olander produced the document (Defendant's Ex. 2) in discovery in this case. Although it was

in his possession, there is no evidence that he divulged the information, obtained it improperly, or took it from the bank without authority.

16. Compass also has failed to show that it is likely to suffer irreparable harm in the absence of a preliminary injunction. Even if Compass were relieved from the burden to show irreparable harm before securing a preliminary injunction enforcing a covenant not to compete, there is no reason Compass should be relieved of its burden to meet each preliminary injunction standard in order to secure a preliminary injunction enforcing other contractual provisions.

confidentiality obligation to Compass. It is therefore

**ORDERED** that Compass's Application for Preliminary Injunction is **denied.**