[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1382 
The plaintiff, James S. Kemper Company Southeast, Inc. (Kemper), appeals from a judgment of the Montgomery County Circuit Court granting partial injunctive relief and denying any damages. The circuit court granted both a temporary and a permanent injunction enforcing a covenant not to compete in west Alabama, but denied enforcement in east Alabama and northwest Alabama.
The issues raised on this appeal are as follows:
 1. Did the circuit court err in refusing to grant a statewide injunction to enforce the covenant not to compete with the plaintiff as to plaintiff's existing customers and those prospects for whom actual insurance quotations had been prepared for a period of two years beginning on the effective date of defendant Tillery's resignation?
 2. Did the circuit court err in failing to award compensatory damages to Kemper when the great weight of the evidence indicated that defendant Tillery had wrongfully breached his contract with plaintiff and the plaintiff had suffered actual damages as a result of the breach?
 3. Did the circuit court err in failing to award damages against defendant Cox for knowing and intentional interference with the contractual relationship between defendant Tillery and the plaintiff?
We answer these questions in the affirmative, and hold that plaintiff is entitled to a statewide injunction and damages for wrongful breach of contract and tortious interference therewith.
The salient facts in this case are as follows:
Kemper is an Atlanta-based insurance brokerage company engaged in the property and casualty insurance business. It serves an eight-state area including North Carolina, South Carolina, Tennessee, Florida, Georgia, Alabama, Mississippi, and Arkansas. In Alabama, at least, it has specialized in casualty insurance for the lumber and wood products industry.
Kemper has only one office in Alabama, located in Montgomery, and had employed defendant Tillery in that office since 1963. From the time he was hired until 1978, when he was provided with an assistant, Tillery was Kemper's only salesman, solicitor or servicing agent in Alabama. At the time of his resignation in November 1981, Tillery was Kemper's resident vice-president for Alabama. It is undisputed that from the beginning of his employment until his resignation, Tillery retained full supervision over Kemper's business in Alabama, and was paid commissions on all premiums earned in the state, though his assistant serviced east Alabama initially, and later the northwest corner of the state.
Lumber industry casualty insurance is a specialized field based on the customer operations and risks, and is highly competitive. Kemper established Tillery in this field, trained him, and carried the Alabama office at a loss for several years until Tillery could build up a base of clients. According to Tillery himself, his ability to make sales and service accounts was largely the product of the knowledge of the field and the long-standing customer relations that he had developed during his employment with Kemper. It was this knowledge and familiarity with customers and potential customers that made Tillery a very valuable prospective employee to defendant Cox Associates, Inc. (Cox).
The group of Kemper customers in Alabama consists of 150 lumber companies, approximately 80% of which were written by *Page 1383 
Tillery initially. In addition, Kemper, under Tillery's management, maintained files of 100 active prospects for which quotations had been prepared. The injunction sought by Kemper was limited to these two groups: the signed customers and the quoted prospects; that is, only those people and companies, and the information about them, obtained by the very work Tillery was paid to do while employed by Kemper.
In 1963 and in 1976, Tillery entered into written employment contracts with Kemper. The 1976 contract contained a covenant not to compete, which provided that upon termination of his employment, Tillery would not, for a period of two years:
 (a) In any way disturb, or seek to secure discontinuance of, any insurance business (of which the Solicitor has secured any knowledge due to the Solicitor's employment by the Company, or produced by the Solicitor during the Solicitor's employment) carried by the company, or its successor or assignee;
 (b) Solicit, place, accept, or aid in the replacement or renewal of, any such insurance written by the Company;
 (c) Divulge to any other insurance company, broker, agent or agency any information or lists or records with respect to the business of the Company;
. . . .
 (f) Solicit, accept, or otherwise participate in the writing of any insurance business from or for any person (with whom Solicitor had any contact as a Company employee) who was a prospective insurance customer of the Company during the last two years of Solicitor's employment with the Company.
 The provisions of this Article Fifth shall apply only to insurance written or serviced and/or to proposals and/or quotations made to customers or prospective customers during the period of Solicitor's employment and to risks located within the limits of the territory in which Solicitor is regularly employed under this agreement.
Immediately following his termination with Kemper, Tillery was hired by Cox. Though Tillery informed Cox of his agreement not to compete with Kemper, Cox authorized and paid for a trip by Tillery through west, northwest, north and north central Alabama to call on Kemper clients for the purpose of soliciting their business for Cox. In other words, Cox encouraged Tillery to exploit his long-standing relations with Kemper's customers and prospects in order to secure their business for Cox.
The facts stipulated by the parties include the following in regard to Tillery's solicitation of Kemper's customers and prospects after his resignation:
 6. That subsequent to his resignation from Kemper, Tillery has been employed as an account executive by Cox, a competitor of Kemper engaged in the business of writing insurance in the same area in which Tillery worked while employed by Kemper.
 7. That subsequent to Tillery terminating his employment with Kemper, Tillery has contacted and solicited certain customers of Kemper (of which he had secured knowledge of during his employment with Kemper or which he produced during his employment with Kemper) in an effort to obtain the insurance coverage for Cox.
 8. That Tillery has solicited and actually placed certain insurance business previously written by Kemper through his new employer, Cox.
As a result of such solicitation, Tillery was successful in switching three accounts from Kemper, totaling $14,195.95 in lost commissions. In addition, his quotations to six other accounts had forced Kemper to cut or discount its premiums to recapture the accounts, resulting in commission losses to Kemper of another $3,405.00.
This action was brought in circuit court by Kemper seeking specific performance of the covenant not to compete. Kemper sought temporary and permanent injunctions restraining the defendants from violating the covenant, and damages for breaches which had allegedly occurred immediately after Tillery's resignation. *Page 1384 
Hearings on both injunctions were based upon a set of stipulated facts, oral testimony, written documents, and the deposition of Kenneth Cox. The circuit court granted a temporary and permanent injunction enforcing the covenant in west Alabama, but denied enforcement in east and northwest Alabama. The court also refused to award Kemper any damages. Hence, Kemper appeals.
 I.
It is clear, as defendants contend, that § 8-1-1, Code 1975, expresses the public policy of Alabama that contracts restraining employment are disfavored. DeVoe v. Cheatam,413 So.2d 1141 (Ala. 1982). This is so "because they tend not only to deprive the public of efficient service, but tend to impoverish the individual." Robinson v. Computer Servicenters,Inc., 346 So.2d 940, 943 (Ala. 1977). Nevertheless, the courts will enforce the terms of a covenant not to compete if:
1. the employer has a protectable interest;
 2. the restriction is reasonably related to that interest;
3. the restriction is reasonable in time and place;
 4. the restriction imposes no undue hardship on the employee.
DeVoe v. Cheatam, 413 So.2d at 1142.
"In order to have a protectable interest the employer must possess `a substantial right in its business sufficiently unique to warrant the type of protection contemplated by [a] noncompetition agreement.'" Id. at 1142, citing CullmanBroadcasting Co. v. Bosley, 373 So.2d 830, 836 (Ala. 1979). In the case of a "post-employment restraint," as in the present case, justification, according to the Restatement (Second) ofContracts § 188, Comment B (1979), generally must be "on the ground that the employer has a legitimate interest in restraining the employee from appropriating valuable trade information and customer relationships to which he has had access in the course of his employment." Similarly, we have said that "if an employee is in a position to gain confidential information, access to secret lists, or to develop a close relationship with clients, the employer may have a protectable interest." DeVoe v. Cheatam, 413 So.2d at 1143.
In the present case, Tillery clearly had access to valuable trade information and customer relationships in the course of his employment with Kemper. Through Kemper, Tillery was able to learn every customer and potential customer for lumber industry casualty insurance in Alabama. Such information and the clientele acquaintance involved clearly constitute a protectable interest of Kemper.
The trial court made no finding that any part of the restrictive covenant was unreasonable or unfair. The restrictions in the covenant reasonably relate to the protection of Kemper's interest in a narrow, identifiable group of clients and potential clients, where Kemper has a work product investment in those clients with which Tillery was involved. Furthermore, there can be no doubt that a two-year period for the restriction is reasonable. As this Court held inRush v. Newsom Exterminators Inc., 261 Ala. 610, 75 So.2d 112
(1954): "It would hardly be contended that the period of two years was unreasonable as to time."
The question of when the two-year period of noncompetition begins is tied to a determination of where and when Tillery was "regularly employed" under his agreement not to compete with Kemper. The circuit court undoubtedly based its issuance of a permanent injunction against the defendant for west Alabama, effective for two years from November 27, 1981, the date of Tillery's termination, on a determination that Tillery was "regularly employed" there by Kemper until the effective date of his resignation. We wholeheartedly agree with this decision. Even after the administrative division of the state between himself and his assistant in 1979, Tillery was solely responsible for Kemper's business in west Alabama.
The circuit court's decision not to enjoin defendants at all in the eastern part of *Page 1385 
Alabama and to enjoin defendants in the northwestern part of Alabama beginning at a date earlier than the effective date of Tillery's resignation seems to be grounded on the belief that Tillery had ceased to be "regularly employed" in those areas prior to the date of his resignation. We consider such a conclusion to be untenable in view of the undisputed evidence that Tillery, until just prior to his resignation, coordinated and supervised all sales, renewals and service of all clients and prospects in Alabama, and was entitled to commissions on the basis of the entire state. The court erred in focusing on the territory that Tillery regularly traveled as opposed to the territory in which he was "regularly employed," namely the entire state of Alabama. This latter territorial description, which is specified in the covenant to be the area in which the restriction will apply upon termination of employment, is the only one reasonably suited to the protection of Kemper's substantial interest in its customers and potential customers. (It should be noted that this statewide restriction is limited to two identifiable groups; the covenant does not restrict Tillery or Cox, a general insurance agency, from dealing with non-lumber customers or even with lumber customers that are not currently customers or quoted prospects of Kemper.)
To enforce the covenant in this case on a statewide basis would be consistent with this court's ruling in Parker v. EbscoIndustries, Inc., 282 Ala. 98, 209 So.2d 383 (1968), that the territory of a covenant not to compete may properly include part of Alabama, all of Alabama or "more territory than the state of Alabama," depending on the circumstances. Such enforcement would also be in accord with decisions of other jurisdictions that have held the territory in which an insurance agent's covenant not to compete is enforceable to be an entire state, or more generally, the area in which the agent was active for the insurance company. Oxman v. Profitt,241 S.C. 28, 126 S.E.2d 852 (1962); Colonial Life AccidentInsurance Co. v. Kappers, 488 P.2d 96 (Colo.Ct.App. 1971);Ashville Associates, Inc. v. Miller, 255 N.C. 400,121 S.E.2d 593 (1961); Federated Mutual Implement and Hardware InsuranceCo. v. Anderson, 49 Tenn. App. 124, 351 S.W.2d 411 (Tenn.Ct.App. 1961); Mosimann v. Employers Casualty Company, 354 S.W.2d 171
(Tex.Civ.App. 1962).
The circuit court took an erroneous view of the clear language of the covenant and the law as applied to the facts of this case. The court, without any finding to the contrary, erred in failing to enforce the covenant according to its terms by a statewide injunction.
 II.
In Cullman Broadcasting Co. v. Bosley, 373 So.2d 830 (Ala. 1979), this court held that a trial court's refusal to enjoin an employee from breaching a covenant not to compete "does not preclude an action by the employer for damages arising out of the employee's breach." Nor does the granting of injunctive relief preclude such an action.
In the present case Kemper was clearly entitled to bring an action for damages resulting from Tillery's alleged breaches of the covenant not to compete. If Kemper was able to establish that breaches had occurred, then it was entitled to nominal damages even if there was failure of proof regarding actual damages. Williams v. Citizens Bank of Guntersville,350 So.2d 1031 (Ala. 1977). When the evidence establishes a breach, even if only technical, there is nothing discretionary about the award of nominal damages. Ellis v. W.L. Casey Co., 4 Ala. App. 518,58 So. 724 (1912). The evidence is undisputed that Tillery solicited the business of nine customers and quoted prospects of Kemper; hence, Kemper clearly established multiple breaches by Tillery, entitling it to an award of at least nominal damages. The circuit court erred in not awarding Kemper at least such damages.
If Kemper was able to show the actual damages it suffered as a result of the breaches by Tillery, then it was entitled to compensatory damages. McDonald v. Amason, 39 Ala. App. 492,104 So.2d 716, cert. stricken, 267 Ala. 654, 104 So.2d 719 *Page 1386 
(1958). The measure of damages is the amount of loss suffered by Kemper, caused by the breaches of the covenant. B M Homes,Inc. v. Hogan, 376 So.2d 667 (Ala. 1979); Coastal States LifeInsurance Co. v. Gass, 278 Ala. 656, 180 So.2d 255 (1965).
The stipulations of the parties and the undisputed evidence show that the defendants Cox and Tillery knowingly caused Hinton Lumber Company, located in west Alabama, where the injunction applies, to change its coverage away from Kemper. The undisputed loss to Kemper on the Hinton business was $2,500.00 in commission. Moreover, the evidence was undisputed that Tillery had, as of the time of the hearing for the permanent injunction, succeeded in switching at least two other accounts (Dozier Lumber Company and Newton Lumber Company) away from Kemper for lost commissions totaling $11,695.95. In addition, Tillery's quotations to six other accounts had forced Kemper to cut or discount its premiums to recapture the accounts, resulting in commission losses to Kemper of $3,405.00. That most of the accounts were in the eastern part of Alabama is of no consequence. The covenant should be enforced statewide.
 III.
Defendant Cox submits that under the law of Alabama, there is no action for tortious interference with a contract in the absence of fraud, force of some form, or coercion. In support of this position, Cox cites Volz v. Liberty Mutual InsuranceCompany, Inc., 498 F.2d 659 (5th Cir. 1974), and Homa-GoffInteriors, Inc. v. Cowden, 350 So.2d 1035 (Ala. 1977). Its reliance on these cases is misplaced.
As Justice Jones indicated in Homa-Goff Interiors, Inc. v.Cowden, "generally Alabama does not recognize a cause of action for the tortious interference with a contract." 350 So.2d at 1038. He went on to note, however, two important exceptions to the rule: "The first involves employer-employee relationships; and the second occurs when a party to a lease has been induced, by fraud or coercion, to breach his contract." Id. See Erswellv. Ford, 208 Ala. 101, 94 So. 67 (1922). It must be noted carefully that the requirement of fraud or coercion applies only to the second of the two exceptions according to this court in both Erswell v. Ford and Homa-Goff Interiors, Inc. v.Cowden.
In Volz v. Liberty Mutual Insurance Company, Inc., supra, the United States Court of Appeals for the Fifth Circuit addressed the question of whether an insurance company had tortiously interfered with the contract that existed between an attorney and his client under Alabama law. The court did indicate that in the absence of fraud or coercion any interference with the contract was not actionable. However, in a later decision of the Fifth Circuit, the court indicated that in Volz the court had been referring to situations where discharge of an employee was procured to force the employee to do some act. Hennessey v.National Collegiate Athletic Ass'n, 564 F.2d 1136, 1143 (5th Cir. 1977). The court in Volz did not indicate that fraud or coercion was a requirement for interference with the contractual relationship between an employer and an employee to be actionable.
To be actionable, interference with the employer-employee relationship must be an affirmative, intentional, knowing, malicious, unjustified or unlawful interference with the contractual rights. Brown v. Chem Haulers, Inc., 402 So.2d 887
(Ala. 1981); Alcazar Amusement Co. v. Mudd Colley AmusementCo., 204 Ala. 509, 86 So. 209 (1920). Such interference constitutes a tort for which the employer has an action against the third party. C. Gamble and O. Corley, Alabama Law ofDamages, § 21-3 (1982), citing Alcazar Amusement; Erswell; andHoma-Goff Interiors, Inc.
In the present case, there is no doubt that Cox knew of Tillery's covenant not to compete and intended that Tillery should breach it. Indeed, Cox authorized and financed a trip by Tillery to call on Kemper's customers and prospects in order to solicit their business for Cox. It is clear *Page 1387 
that the results of this solicitation, and other similar exploitation of Tillery's long-standing relations with Kemper's customers and prospects, were the losses for which Kemper has sought damages. It is only appropriate that Kemper should be awarded compensatory damages for the losses it has incurred as a result of Cox's tortious interference with Tillery's employment contract. The trial court erred in not awarding such damages to Kemper.
For all the above reasons, we reverse the trial court's judgment, except as to the order for partial injunctive relief, which we affirm, and remand with instructions that the trial court grant statewide injunctive relief and damages to the plaintiff.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.