Preferred Risk Mutual Insurance Company brought this action seeking an injunction and money damages against its former agent, Robert Hoppe, and against Hoppe's business partner, Jack Green, for violating provisions in Hoppe's contract with Preferred Risk prohibiting him from soliciting Preferred Risk's policyholders. After a hearing on the request for an injunction, the trial court ruled in Preferred Risk's favor, granting the injunction, and entered a Rule 54 (b), A.R.Civ.P., order. The defendants appeal.
From 1973 until the end of 1983 Hoppe operated an insurance agency, selling Preferred Risk's policies. Hoppe's contract with Preferred Risk provided that while he was a Preferred Risk agent, Hoppe was not to write or service insurance for any other company. It also stated that all information regarding Preferred Risk's policyholders, such as names, addresses, and expiration and renewal dates of their policies, were trade secrets owned by Preferred Risk. Hoppe also agreed that after termination of his relationship with Preferred Risk he would not solicit any of Preferred Risk's policyholders for the purpose of attempting to persuade them to purchase insurance from another insurance company for a period of one year.
In November of 1983, without notifying Preferred Risk, Hoppe moved from his office to a new location and began selling other companies' policies under the name of Greene and Hoppe Insurance Agency, Inc. Hoppe transferred the telephone number which he had used for a number of years while a Preferred Risk agent to the Green and Hoppe Agency. Green and Hoppe's advertisement in the yellow pages of the Mobile telephone directory stated that Green and Hoppe represented Preferred Risk and several other insurance companies.
On November 28, 1983, Preferred Risk notified Hoppe that it was terminating their contract as of December 31 of that year because of Hoppe's breach of their contract. The following day Preferred Risk requested that Hoppe return its property, including its policyholder service files. Hoppe returned some of the requested property, including rate manuals, envelopes, brochures, and forms; however, he refused to return the policyholder service files.
Preferred Risk filed this action and after a hearing on the request for an injunction the trial court found that Hoppe had entered into a binding contract with Preferred Risk and that Preferred Risk had properly terminated the agreement after Hoppe's breach. It found that the defendants had solicited the plaintiff's insureds in violation of the contract and that the non-renewal rate of the Preferred Risk policies sold by Hoppe increased from an average of 15% prior to termination of the contract to over 50% for December 1983 and January 1984. It ordered the defendants to return all of Preferred Risk's property, including *Page 1163 
the policyholder service files, to refrain from using the telephone number in question to solicit Preferred Risk's policyholders or prospective customers, and to refrain for a period of one year from initiating contact with persons known to the defendants to have been Preferred Risk policyholders at the time the contract was terminated for the purposes of soliciting or inducing Preferred Risk's policyholders to surrender or cancel their coverages with Preferred Risk or allow them to lapse. The order went on to provide, however, that Hoppe could solicit individuals who "were his personal customers by reason of defendant Hoppe's own individual sales attributes and not because of his being a Preferred Risk Mutual Insurance Company agent."
On appeal, Hoppe and Green argue: (1) that the contract provision preventing Hoppe from soliciting plaintiff's policyholders violates § 8-1-1, Code of Alabama 1975; (2) that the contractual provision in question was not supported by consideration, and, therefore, is unenforceable; and (3) that injunctive relief was improper because plaintiff had an adequate remedy at law.
Section 8-1-1 provides that a provision in a contract which restrains anyone from exercising a lawful profession, trade, or business is void unless the contract falls within one of three exceptions. First, the seller of a business may agree not to carry on a business similar to that of the purchaser of the good will of the business. Second, one who "is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such an employer within a specified county, city or part thereof so long as the . . . employer carries on a like business therein." Third, as a part of the dissolution of a non-professional partnership, partners can agree not to compete.
Hoppe argues that under the terms of their agreement he was not Preferred Risk's agent, but was, instead, an independent contractor. He contends that under § 8-1-1, because on his status as an independent contractor, he cannot be subject to non-competition or trade secret restrictions. PremierIndustrial Corp. v. Marlow, 292 Ala. 407, 295 So.2d 396 (1974).
Assuming, arguendo, that Hoppe was an independent contractor Preferred Risk could not enforce a non-competition agreement against him. The contract would not fall within any of the exceptions contained in § 8-1-1. If he was an independent contractor, Hoppe was not "employed as an agent, servant or employee" of Preferred Risk. It is unnecessary to determine whether he was an independent contractor, however, because the contractual provision in question is not a non-competition agreement. A prohibition against soliciting the plaintiff's customers whose identities became known to the defendant in confidence as a result of the parties' prior relationship is not the same as a prohibition against engaging in a lawful profession, trade, or business. State Farm Mutual AutomobileIns. Co. v. Dempster, 174 Cal.App.2d 418, 344 P.2d 821, 825
(1959).
This case is governed by our decision in Famex, Inc. v.Century Ins. Services, Inc., 425 So.2d 1053 (Ala. 1982). The plaintiff in that case, Famex, Inc., was a subsidiary of Fireman's Fund Insurance Company. Famex was engaged in marketing insurance. It consulted with insurance agencies, developed group insurance programs, and organized sales networks for marketing groups. The defendant, Century Insurance Services, Inc., was an independent insurance agency of Fireman's Fund. Century entered into an agreement with Famex whereby Famex provided materials pertaining to the implementation of the Famex marketing plan, premium rates, underwriting criteria, and "leads." Famex also conducted market and loss control research for Century's benefit. The parties operated under the terms of their agreement until Century breached the contract by selling several insurance policies for carriers not affiliated with Famex or Fireman's Fund. Famex brought an action seeking to enforce *Page 1164 
a provision in the contract prohibiting Century from soliciting Famex's insureds. The trial court ruled that the provision violated § 8-1-1. This court reversed on the authority ofHibbett Sporting Goods, Inc. v. Biernbaum, 391 So.2d 1027 (Ala. 1980), and Terre Haute Brewing Co. v. McGeever, 198 Ala. 474,73 So. 889 (1916). Those cases stand for the proposition that, although contracts in general restraint of trade are void, partial restraints of trade may, in appropriate instances, be enforceable. We concluded that because Century was not prohibited from doing business, but only from soliciting Famex insureds, the clause in question was a partial restraint of trade and, therefore, not violative of § 8-1-1:
 "Under the agreement in the present case, the restraint lasts for three years, which is a reasonable time. Century is not prohibited from doing business, but only from soliciting Famex insureds. . . . In light of Hibbett and the cases cited therein, the statute [§ 8-1-1] does not apply to partial restraints. The clause at issue in the case at bar obviously is in partial restraint of trade; it is reasonable and sufficiently limited, and therefore it is not void."
425 So.2d at 1055.
Hoppe, like Famex, was not prohibited by the trial court's order from selling insurance. He was merely prevented from soliciting Preferred Risk's policyholders. His argument that he has been "restrained from exercising a lawful profession, trade or business" within the meaning of § 8-1-1 is unfounded.
Hoppe's argument that the clause in question is void for want of consideration is also meritless. In addition to paying him commissions, Preferred Risk allowed Hoppe to hold himself out as a Preferred Risk agent. He was provided rate manuals, soliciting information, and other documents helpful in the operation of his business. Their relationship extended over a period of about ten years and, from all that appears in the record, it would have continued indefinitely had Hoppe not begun selling policies issued by other insurers. There was ample consideration for Hoppe's promise not to solicit Preferred Risk's customers upon termination of the agreement.
Finally, Hoppe argues that injunctive relief was improper because Preferred Risk had an adequate remedy at law. He argues that allowing an injunction "would cause the underlying damage claim . . . to be tried on erroneous precedent."
We disagree. Injunctive relief may be awarded to enforce a covenant not to compete. Neither the granting nor the denying of such a request precludes an action for damages. James S.Kemper Co. v. Cox Assoc., 434 So.2d 1380, 1385 (Ala. 1983);Cullman Broadcasting Co. v. Bosley, 373 So.2d 830, 837 (Ala. 1979). If a prior agent or employee can be enjoined from practicing his trade or business, we can see no logical reason to adopt a different rule with regard to a partial restraint of trade such as the one involved here.
The judgment of the trial court is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.