Caribe, U.S.A., Inc., which was in the break bulk cargo liner service business, hired Dane Romano as general manager of export operations. Romano had been previously employed by Bordelon Brothers Towing (which was also in the break bulk cargo liner service business), where for approximately four months he served as director of export operations, directly involved in booking break bulk cargo. Pursuant to an employment agreement between Caribe and Romano that contained noncompetition and nonsolicitation-of-customers provisions, Caribe was allowed to seek injunctive relief and other remedies in case of a breach. In negotiating the agreement and before he agreed to these restrictions, Romano insisted on and received additional language that provided him more compensation. Six weeks after Romano was hired, Caribe discharged him because of allegedly poor performance. Subsequently, Romano was employed by G B Marine, Inc., as an export coordinator.[1] Subsequently, Romano induced G B to compete directly with Caribe by soliciting its customers. When Caribe discovered Romano's activity, it sent him a letter by certified mail asking that he cease and desist from soliciting its customers and adhere to the agreement. Romano refused. Consequently, Caribe sought a temporary restraining order and preliminary and permanent injunctions requiring Romano to comply with the terms of the employment agreement, and it sought damages for breach of contract. Romano asserted that the employment agreement was void and that Caribe did not have a protectable interest to *Page 1236 
support the enforcement of the nonsolicitation and noncompetition provisions of the agreement. The trial court, after hearing ore tenus evidence, granted Caribe's request for a three-year injunction against competing with Caribe or from soliciting those customers for which Caribe had actually shipped cargo as of December 31, 1992 (Romano's last day of employment with Caribe). The trial court's judgment provides as follows:
"II. Findings and Conclusions
"A. Validity and Enforceability of Agreement
 "The relevant provisions of the Agreement are valid and enforceable under Alabama law. . . .
"1. The Covenant Not to Compete
 "Although [Ala. Code 1975, § 8-1-1,] normally invalidates a covenant not to compete, the provision is nonetheless enforceable under the law because the following conditions have been met: (1) Caribe has a protectable interest; (2) the restriction is reasonably related to that interest; (3) the restriction is reasonable in time and place; and (4) the restriction imposes no undue hardship on Romano. See, generally, James S. Kemper Co. v. Cox Associates, Inc., 434 So.2d 1380
(Ala. 1983); Gross v. QMS, Inc., 613 So.2d 331
(Ala. 1993).
 "a. Caribe Has a Protectable Interest
 "Caribe has a protectable interest because it has a legitimate interest in restraining Romano from appropriating valuable trade information and customer relationships to which he had access during the course of his employment. James S. Kemper Co., 434 So.2d at 1384. Further, because Romano was in a position to gain confidential or proprietary information, access to confidential or proprietary lists, and develop a close relationship with clients, Caribe has a protectable interest. Id.
 "Caribe had and has a protectable interest in the customer lists, price lists, trade routes, goodwill, and other information and documents identified at trial. The court finds that the break bulk cargo liner service business is highly competitive and the acquisition and protection of customer lists, pricing lists, trade routes and a regular clientele [are] of crucial importance.
 "The information and documentation obtained by Romano, or to which he had access, while employed by Caribe was sufficiently 'substantial or unique' to support a finding of a protectable interest. Though some of this information may not be considered 'top-secret,' most of it is available only through expertise, purchase, investigation or extensive research. The assemblage of information is valuable because of the need for expertise, time, money, or a substantial combination of these resources to assemble it. As a result, this information is therefore confidential, proprietary and protectable.
 "The court finds that Romano did acquire the names of some of Caribe's customers while he worked for Caribe. He also cultivated Caribe's contacts with its customers while he was there and he received other proprietary information as well. As one minor example, Romano admitted that he copied one of Caribe's confidential and proprietary deck plans to take with him to his new employment. In short, Romano's employment placed him in a position where he had access to confidential and proprietary information and where he could develop close personal relationships with customers of Caribe. This position provided him with the opportunity to misappropriate proprietary information and to do so in ways that could not even be discovered by Caribe. The inherent difficulties of proving all of the proprietary information misappropriated by Romano or what business was actually lost due to Romano's efforts, justified the inclusion of the noncompetition and nonsolicitation provisions in the Agreement.
 "The testimony elicited at trial and the exhibits introduced into evidence at trial clearly demonstrated that Caribe treated all aspects of its business, including but not limited to, the customer lists, pricing lists, voyage histories, deck plans, tariffs and the like, in a confidential manner. . . . Romano, in executing the Agreement and Job Description acknowledged that the information and documentation received by him was 'confidential business and financial *Page 1237 
information' including 'information concerning customers with Caribe.' At trial Romano admitted that he knew and understood that [Wiley] Falgout [Caribe's president] felt that Caribe's customer list was confidential to Falgout and his business.
 "Romano has clearly breached the noncompetition and nonsolicitation provisions to the detriment of Caribe. For these and other reasons, Caribe clearly has a protectable interest. As a result, the provisions are enforceable.
 "b. The Restrictions Are Reasonably Related to Caribe's Protectable Interest
 "The court finds that the restrictions enforced under this order are reasonably related to Caribe's protectable interest. A huge capital investment, amounting to several million dollars, had been made by and on behalf of Caribe. The restrictions in the Agreement prohibit Romano from competing against Caribe in the break bulk cargo liner service business and from soliciting the customers of Caribe. These restrictions are inherently reasonable based upon the protectable interest of Caribe. . . . In Central Bancshares of the South, Inc. v. Puckett, 584 So.2d 829
(Ala. 1991), the Alabama Supreme Court recognized that restrictions regarding noncompetition in the former employer's business, as a matter of law, are reasonably related to that employer's protectable interest.
 "Caribe is not seeking to enjoin Romano from obtaining other employment in the maritime field, or any other field, for which he is otherwise qualified. The résumé and testimony of Romano clearly establish that Romano possesses transferrable skills and is qualified to obtain employment in the maritime field, or any other field, unrelated to the break bulk cargo liner service business. . . . As a result, the injunction sought by Caribe would not prevent Romano from earning a livelihood.
 "c. The Restrictions Are Reasonable In Time and Place
 "Though the Agreement provides for a restriction of five (5) years, the court will order . . . that a permanent injunction shall be entered for the duration of a period of three years from the date of Romano's discharge, on more limited terms. These restrictions are sufficient and reasonable under the fact of this case. These restrictions are reasonable given the time necessary to realize any rate of return on the substantial capital investment.
 "d. The Restrictions Impose No Undue Hardship On Romano
". . . .
 "It is undisputed that Romano voluntarily executed the Agreement. In fact, he refused to accept the original terms proposed to him and negotiated more favorable terms. . . . Clearly, he received valuable consideration in return for his execution of the Agreement. [See Nationwide Mutual Insurance Co. v. Cornutt, 907 F.2d 1085 (11th Cir. 1990).]
 "It is also undisputed that Romano possesses talents and skills other than the talents and skills required to pursue employment in the break bulk cargo liner service business. In fact, Romano's résumé and testimony clearly establish that Romano's work experience is in areas other than the break bulk cargo liner service business. He could return to being a marine dispatcher at any time. Romano was involved in direct sales and bookings in the break bulk cargo liner service business for only four (4) months prior to obtaining employment with Caribe. Before that time he had numerous years of experience in the marine industry as a dispatcher, an operations manager for a marine terminal, and eventually as a port captain.
 "Romano clearly has transferable skills that would serve him well in obtaining sales-related employment and/or other employment, maritime or otherwise, not related to the break bulk cargo liner service business.
"2. Nonsolicitation Provision
 ". . . [T]he court has found that Caribe possesses a protectable interest. Accordingly, the nonsolicitation clause is likewise enforceable. The court, however, further specifically finds that nonsolicitation provisions are only partial restraints of trade. *Page 1238 
As a result, Section 8-1-1, Ala. Code 1975, which normally invalidates agreements restraining trade, does not apply. See Hoppe v. Preferred Risk Mut. Ins. Co., 470 So.2d 1161 (Ala. 1985); Famex v. Century Ins. Services, Inc., 425 So.2d 1053
(Ala. 1982); Corson v. Universal Door Systems, Inc., 596 So.2d 565, 568 (Ala. 1991). Corson explained that if the agreement prevents only solicitation, instead of competition, then § 8-1-1 does not apply. Id. at 568.
 "The critical facts are not in dispute. Romano admits that he signed the Agreement. . . . Romano admits that he agreed not to solicit Caribe customers after termination. . . . Romano admits that he solicited Caribe customers after termination by letter, by phone and by personal visit. . . . Romano stipulated that Caribe was entitled to pursue injunctive relief and seek monetary damages against him if he did so. . . . Romano stipulated that Caribe would suffer 'immediate and irreparable injury' if he violated these provisions. . . . Clearly, the nonsolicitation provision is enforceable. The court specifically finds that Caribe did not act wrongfully and was, in fact, completely justified in pursuing and obtaining the temporary and preliminary injunctive relief obtained to enforce this provision and the other provisions of the Agreement."
Furthermore, although the trial court was reasonably satisfied that Caribe suffered damage as a result of Romano's violation of the noncompetition and nonsolicitation provisions of the agreement, it was not reasonably satisfied as to the amount of damage. Therefore, it awarded Caribe only nominal damages, in the amount of $1, but held that Caribe was entitled to reasonable attorney fees, costs, and expenses, which were to be determined at a later date. Subsequently, Caribe filed a bill of costs; following anore tenus proceeding, the trial court entered an order awarding Caribe attorney fees of $98,000 and costs of $2,998.09. Romano appealed, maintaining that the trial court erred in holding that Caribe had a protectable interest sufficient to enforce the noncompetition and nonsolicitation provisions of the employment agreement; in concluding that the nonsolicitation provision in the agreement was only a partial restraint of trade; and in awarding Caribe nominal damages, $98,000 in attorney fees, and costs. Caribe cross appealed, maintaining that the trial court erred in awarding it only nominal damages for Romano's breach of contract and in reducing the enforceability of the noncompetition and nonsolicitation provisions from five years to three years.
Finding dispositive the issue whether the trial court erred in holding that Caribe had a protectable interest that allowed it to enforce the noncompetition and nonsolicitation provisions of the employment agreement, the Court of Civil Appeals, by an opinion issued June 28, 1996, held that the trial court misapplied the law to the facts before it when it held that Caribe had a protectable interest in its pricing information; its customers' history of shipments, shipment quantities, and destinations; and its customer lists, and that the trial court abused its discretion in entering the permanent injunction. Therefore, the Court of Civil Appeals vacated the injunction and reversed the judgment of the trial court. Caribe applied for a rehearing of the order vacating the injunction. Romano also applied for a rehearing, asking the Court of Civil Appeals to consider whether the injunction was wrongly issued and, therefore, whether he was entitled to costs, damages, and attorney fees. On August 23, 1996, the Court of Civil Appeals withdrew its original opinion and substituted a new opinion; the new opinion was identical to the original opinion holding that the injunction had been wrongly issued, except that the substituted opinion, in addition to holding that the injunction had been wrongfully issued, also held that Romano was entitled to whatever costs, damages, and attorney fees he was able to prove to the trial court. The Court of Civil Appeals wrote:
 "We find the first issue — whether the trial court erred in holding that Caribe had a protectable interest sufficient to enforce the noncompetition and nonsolicitation provisions of the employment contract — to be dispositive.
 "The law regarding covenants not to compete and nonsolicitation agreements was succinctly stated in James S. Kemper Co. v. Cox Assocs., 434 So.2d 1380, 1384 (Ala. 1983): *Page 1239 
 " 'It is clear, as defendants contend, that § 8-1-1, Code 1975, expresses the public policy of Alabama that contracts restraining employment are disfavored. DeVoe v. Cheatham, 413 So.2d 1141
(Ala. 1982). . . . Nevertheless, the courts will enforce the terms of a covenant not to compete if:
 " '1. the employer has a protectable interest;
 " '2. the restriction is reasonably related to that interest;
 " '3. the restriction is reasonable in time and place;
 " '4. the restriction imposes no undue hardship on the employee.
" 'DeVoe v. Cheatham, 413 So.2d at 1142.'
 " ' "In order to have a protectable interest the employer must possess a 'substantial right in its business sufficiently unique to warrant the type of protection contemplated by [a] noncompetition agreement.' " Id. at 1142, citing Cullman Broadcasting Co. v. Bosley, 373 So.2d 830, 836 (Ala. 1979). In the case of a "post-employment restraint," . . . justification, according to the Restatement (Second) of Contracts § 188, Comment B (1979), generally must be "on the ground that the employer has a legitimate interest in restraining the employee from appropriating valuable trade information and customer relationships to which he has had access in the course of his employment." . . . "[I]f an employee is in a position to gain confidential information, access to secret lists, or to develop a close relationship with clients, the employer may have a protectable interest." DeVoe v. Cheatham, 413 So.2d at 1143.'
"I.
 "The trial court found that Caribe's pricing information, and its customers' histories of shipments, shipment quantities, and destinations were confidential information. The court also found that Romano had access to this information during his six-week tenure with Caribe. However, the law governing Caribe and other common carriers makes this information publicly available.
 "Federal law, 46 C.F.R. § 514 (1992), requires the publication and filing of 'tariffs
[publications containing, among other things, the actual rates, charges, etc.] as well as service contracts and their essential terms, covering the transportation of property performed by common carriers in the foreign commerce of the United States.' . . .
 "The essential terms of a service contract
include, among other things, the effective date and the expiration date of the contract; the port of origin; the destination port; the commodities covered by the contract; the minimum volume of cargo; the contract rate; and liquidated damages for nonperformance. 46 C.F.R. § 514.17(d)(4)(ii) and (d)(7)(i), (ii), (iii), (iv), (vi), (vii).
 "Moreover, 46 C.F.R. § 514.1(c)(1) specifically requires common carriers to file with the Federal Maritime Commission, and to keep open to public inspection, 'tariffs showing all rates, charges, classifications, Tariff Rules and practices for transportation between U.S. and foreign ports.'
 "Additionally, John F. Kirkpatrick, an operator of a steamship business, testified that a shipper's export declaration contains the same information as the bill of lading, and that a service of the Journal of Commerce provides the export declaration information to the public. A bill of lading states the shipper's name, the bill of lading number, the receiver's name, and the cargo's 'weight, measurement, and sometimes the ocean freight. . . .'
 "Matters of information common to others in the business or easily obtainable by such others do not rise to the status of a protectable interest. Birmingham Television Corp. v. DeRamus, 502 So.2d 761 (Ala.Civ.App. 1986). As outlined above, Federal law requires that Caribe publicly file its pricing information, shipment quantities and destinations, and the shipper's name, the receiver's name, and the cargo weight. Because this information is available to the public and easily obtained, Caribe has no protectable interest in such information.
"II.
 "The trial court also found that Caribe had a protectable interest in its customer *Page 1240 
lists. However, the lists Caribe submitted as having been given to Romano contain only the name of the customer. They do not identify Caribe's contact with the customer, the customer's address and telephone number, or the customer's shipment history. Further, Terry Bordelon, one of the former owners of Bordelon Brothers [where Romano previously had been employed], and Kirkpatrick both testified that the identities of bulk cargo customers are well known throughout the industry and that it is not difficult to find out the identity of those customers. Bordelon also testified that Stephen Reed [a principal of Caribe and its vice-president of sales and marketing] had worked for Bordelon Brothers before he became associated with Caribe and that Reed used the Caribbean Service Directory (the Directory), a listing of Bordelon Brothers' customers and their individual contacts, at Bordelon Brothers. Bordelon further testified that Reed had taken a copy of the Directory with him when he left Bordelon Brothers and that he did not consider the Directory to be confidential, so he did not object when Reed took a copy of the Directory with him when he left Bordelon Brothers.
 "Romano testified that he kept a copy of the Directory when he left Bordelon Brothers and that he used the Directory and his address book to book cargo for Caribe. Romano denied that he was given any customer lists during his six-week employment with Caribe. However, Reed testified that he gave Romano a copy of Caribe's telephone list and customer lists to use in booking cargo. Reed also testified that Romano had access to customer files that contained information regarding the individual customer's shipment histories, shipment quantities, rates, and destinations.
 "After carefully reviewing the record, we conclude that the customer lists given to Romano during his six-week employment with Caribe were neither unique nor confidential; such lists do not rise to the status of a protectable interest. In fact, the information contained in the lists was commonly known to others in the business and if not known was easily obtainable by such others. DeRamus, supra.
 "Whether to grant or to deny injunctive relief rests in the sound discretion of the trial court and the trial court's ruling will not be set aside unless that court has abused its discretion. Martin v. City of Linden, 667 So.2d 732
(Ala. 1995). Further, when a trial court hears [ore tenus testimony],
 " ' "its judgment based upon that testimony is presumed correct and will be reversed only if, after consideration of the evidence and all reasonable inferences to be drawn therefrom, the judgment is found to be plainly and palpably wrong. . . . Of course, this rule is without application when the trial court erroneously applies the law to the facts before it." '
 "Moore v. McNider, 551 So.2d 1028, 1029-30
(Ala. 1989) (quoting McInnis v. Lay, 533 So.2d 581, 582 (Ala. 1988)).
 "Based on the foregoing, we find that the trial court misapplied the law to the facts before it. We hold that the trial court erred in holding that Caribe had a protectable interest in its pricing information, its customers' history of shipments, shipment quantities, and destinations, and its customer lists, and that the trial court abused its discretion in entering the permanent injunction. See § 8-1-1; DeRamus; Corson v. Universal Door Systems, Inc., 596 So.2d 565
(Ala. 1991). The permanent injunction is therefore due to be vacated, as is the trial court's award of nominal damages, the $98,000 attorney fee, and costs. DeRamus, supra.
 " 'Based on the facts and circumstances in this case, we conclude that the [injunction was], as a matter of law, wrongfully issued; therefore, [Romano], having obtained a dissolution of the [injunction], [is] entitled to whatever costs, damages, and attorney fees [he is] able to prove to the trial court.' Talladega Little League, Inc. v. Anderson, 577 So.2d 1293, 1295 (Ala. 1991)."
Romano v. Caribe, U.S.A., Inc., 702 So.2d 1230, 1232-34
(Ala.Civ.App. 1996). Caribe petitioned for certiorari review, which we granted to determine whether the trial court erred in holding that Caribe had a protectable *Page 1241 
interest that allowed it to enforce the noncompetition and nonsolicitation provisions of the agreement.
Caribe argues that the Court of Civil Appeals disregarded what Caribe calls the trial court's express and correct findings of fact that Caribe's hiring Romano as a salesman and placing him in a position to develop current and potential customer contacts and relationships supported a finding of a protectable interest. Caribe argues that the Court of Civil Appeals thus incorrectly substituted its own judgment of the evidence and ignored the ore tenus rule in concluding that the trial court erred in finding that Caribe possessed a protectable interest. We agree.
When a trial court hears ore tenus testimony, its findings based upon that testimony are presumed correct and its judgment based on those findings will not be disturbed unless, after consideration of all the evidence and all reasonable inferences to be drawn therefrom, the judgment is found to be plainly and palpably wrong, manifestly unjust, or without supporting evidence. See Marvin's, Inc. v. Robertson, 608 So.2d 391
(Ala. 1992).
From a thorough review of the record, we find sufficient evidence to support the trial court's findings that the information at issue was confidential, proprietary, and protectable. There was sufficient evidence for the trial court to find that in the course of his six weeks with Caribe, where Romano worked as general manager of export operations, he was in a position where he had access to confidential and proprietary information, i.e., highly beneficial business information about Caribe's customers, such as customer lists, which included names of contact persons and their telephone numbers; that he was in a position where he could develop close personal relationships with customers of Caribe and generate business and customers for Caribe's benefit; that, as a salesman for Caribe, Romano solicited customers with which he had had no familiarity or contact before working with Caribe; that the break bulk cargo liner service business is highly competitive and the acquisition and protection of customer lists, pricing lists, trade routes, and a regular clientele are of crucial importance; that the information and documentation obtained by Romano, or to which he had access, while employed by Caribe was sufficiently "substantial or unique"; that although some of the information about Caribe's customers that was provided to Romano, e.g., pricing information, shipment quantities and destinations, receivers' names, shippers' names, and cargo weight, was available to the public by the required filing of tariffs pursuant to Federal regulations and through a reporting service published by theJournal of Commerce, and, therefore, could not be considered "top-secret," that information was not easily obtainable, but rather was publicly available, if at all, only through expertise, purchase, investigation, or extensive research; that Caribe treated all aspects of its business, including, but not limited to, the customer lists, pricing lists, voyage histories, deck plans, tariffs, and the like in a confidential manner; and that Romano, in executing the employment agreement acknowledged that the information and documentation received by him, including information concerning Caribe customers, were confidential business and financial information.
The trial court would have erroneously applied the law to the facts before it only if there were no dispute in the facts and the facts were the way the Court of Civil Appeals found them to be. However, the facts were in dispute; and, after considering all the evidence and all reasonable inferences to be drawn therefrom, we conclude that the trial court's findings of fact were not plainly and palpably wrong. Therefore, the trial court did not erroneously apply the law to the facts before it. The Court of Civil Appeals found the facts anew, in violation of the ore tenus standard of review.
The trial court properly recognized that Caribe had a protectable interest and properly issued the permanent injunction. The judgment of the Court of Civil Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, KENNEDY, COOK, BUTTS, and SEE, JJ., concur.
[1] G B had not operated a break bulk cargo liner service business before it hired Romano. *Page 1242